ATTORNEY GENERAL *vs.* SCHOOL COMMITTEE OF TAUNTON.

Bristol.    February 16, 1979. — March 19, 1979.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*School and School Committee,* Open meetings, Collective bargaining.
    *Open Meeting Law,* School committee, Collective bargaining.
    *Municipal Corporations,* Open meetings, Collective bargaining.

A school committee meeting to discuss salaries of various nonunion employees of the school department was exempt from the open meeting requirements of G. L. c. 39, § 23B, on the basis of § 23B(3), which permits closed sessions to "discuss strategy with respect to collective bargaining," where the committee was engaged in active negotiations with representatives of the employees belonging to unions and the factors involved in setting salaries for the nonunion personnel could, if known to the union groups, have an effect on the wage offers made to the unions and could be detrimental to the ongoing collective bargaining discussions with those groups. [229-232]

CIVIL ACTION commenced in the Superior Court on March 18, 1977.

The case was heard by *Forte,* J., a District Court judge sitting under statutory authority.

*Ernest P. DeSimone,* Assistant Attorney General, for the plaintiff.

*David T. Gay*, City Solicitor, for the defendant.

GREANEY, J. The Attorney General challenges, as a violation of the open meeting law, G. L. c. 39, §§ 23A-23C, the action of the defendant school committee of Taunton (school committee) in conducting an executive session to discuss salaries and working conditions for certain nonunion employees.

On January 31, 1977, the school committee met for a review of the proposed school department budget for the fiscal year 1978. During the course of this meeting a motion was made to discuss in executive session particular budget accounts concerning salaries of various nonunion employees of the school department. Consideration of this motion was postponed until such time as an opinion should be obtained from the city solicitor regarding the propriety of holding an executive session for the purpose indicated. After receipt of the requested opinion the school committee met again on February 28, 1977, for a further review of the proposed school department budget. In the course of that meeting the committee unanimously voted to enter executive session for the stated purpose of discussing salaries for nonunion employees. At the time of the executive session the school committee was actively engaged in collective bargaining with three unions representing the teachers, custodians, and cafeteria workers. The superintendent and the assistant superintendent of schools were present with the school committee during the entire closed session. In the course of the executive session the committee voted to recommend the extension of the contracts of the superintendent and assistant superintendent for three years and to recommend the extension of the contracts of other school department personnel[1] for one year. In addition, the committee decided to recommend that the salaries of certain nonunion employees, namely the aides and the clerks, be frozen at the level then in effect in 1977. Finally, the committee

---

[1] The administrative assistant and the reading consultant.

voted to recommend that the amount of $6,678,587.00 be appropriated for professional salaries. All of these recommendations made in the executive session were subsequently adopted by the committee in an open meeting held on March 7, 1977.[2]

The Attorney General commenced an action in the Superior Court, and alleged that the school committee, by holding the executive session, had failed to comply with the open meeting requirements of G. L. c. 39, § 23B. He asked that the committee be ordered to carry out the provisions of the open meeting law at all future meetings and that all action taken by the committee during the executive session and at the later meeting adopting the recommendations be invalidated. See G. L. c. 39, § 23B, pars. 11 and 12. The committee answered by asserting that the executive session was properly invoked under the exemption to the open meeting law contained in G. L. c. 39, § 23B(3), which permits a governmental committee thus to conduct "collective bargaining sessions" or "to discuss strategy with respect to collective bargaining . . . if an open meeting may have a detrimental effect on the bargaining . . . position of the governmental body."

After an evidentiary hearing the judge ruled that the purpose of the executive session fell within both of the quoted parts of the exemption.[3] The Attorney General

---

[2] We do not decide whether the disclosure and ratification of the recommendations made at the closed session at a subsequent public meeting cured any initial failure to comply with the open meeting requirement, since the underlying dispute between the parties as to the alleged violation of the open meeting law remains unresolved, and the merits of the Attorney General's claims for relief under G. L. c. 39, § 23B, have not been finally determined. The public interest inherent in this dispute weighs against treating the case at this point as not presenting a live controversy. See *Geehan* v. *Trawler Arlington, Inc.,* 371 Mass. 815, 817 (1977); *Karchmar* v. *Worcester,* 364 Mass. 124, 136 (1973). Accordingly, we determine that it is appropriate to reach the merits of the parties' contentions.

[3] The Attorney General did not raise any contention with regard to whether the committee complied with all the procedural conditions imposed by G. L. c. 39, § 23B, as a prerequisite to closing a meeting.

appeals from the judgment entered to the effect that the committee was not in violation of the open meeting law. We affirm the judgment on the basis that the executive session fell within that portion of the exemption contained in G. L. c. 39, § 23B(3), which permits closed sessions to "discuss strategy with respect to collective bargaining."[4]

As it applies to meetings of municipal school committees the open meeting law is contained in G. L. c. 39, § 23A-23C. It manifests in § 23B a general policy that all meetings of a governmental body should be open to the public unless exempted by this statute. Both parties recognize that "[t]he open meeting law is designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978). See also Note, Open Meeting Statutes: The Press Fights For the "Right to Know," 75 Harv. L. Rev. 1199 (1962), and Annot., 38 A.L.R.3d 1070 (1971). But the statute recognizes that there necessarily are occasions when public business can properly be conducted without being subject to public scrutiny, since at times "public officials . . . might be unduly hampered in the performance of their duties if all gatherings of members of included governmental bodies must be open to the public." *Ghiglione* v. *School Comm. of Southbridge, supra* at 72-73. As a result § 23B contains a list of exemptions one of which expressly provides that a closed session may be

_____

[4] As a result it is unnecessary to determine the second issue briefed and argued by the parties, whether the discussion of salaries and working conditions for nonunion employees in a closed session constitutes proper collective bargaining under the meaning of the exemption contained in G. L. c. 39, § 23B(3). The Attorney General's argument in this regard, briefly stated, is that that portion of the exemption should apply only to actual bargaining sessions between the committee or its representative and the representative of public employee organizations selected and certified in accordance with the provisions of G. L. c. 150E.

conducted "to discuss strategy with respect to collective bargaining . . . if an open meeting may have a detrimental effect on the bargaining . . . position" of the committee. The judge determined that the meeting in issue here qualified under this exemption. We are not inclined to disturb that conclusion.

There was evidence before the judge that the committee was engaged in active negotiations with the representatives of the teachers', custodians' and cafeteria workers' unions, and that a decision had not been made with respect to the salary proposals that would be offered to the bargaining representatives of these groups. There was ample evidence to support the conclusion that the factors involved in the setting of the salaries for the nonunion personnel could, if known to the union groups, have an effect on the wage packages that would be made to the unions and could be detrimental to the ongoing collective bargaining discussions with those groups. That strategy was involved at the meeting is illustrated by the superintendent's testimony that "[w]e did not at this time want to tip our hands as to what we were going to be negotiating with these people. We were very careful on how we did this in order that the Teachers Association, custodians, and cafeteria workers would not know what our bargaining position would be. We felt if we made our [position] known at this time that these other people would enhance their bargaining position via [*sic*] the School Committee." In the session the committee voted to freeze the wages of the nonunion personnel at current levels and recommended an amount to be established for professional salaries. This is consistent with a strategy determination on the committee's part to indicate to the other unions, principally the union representing the professional staff, that it might expect a modest wage proposal in view of what was accorded to the nonunion employees. We cannot say that the judge was plainly wrong in his ruling that the committee had met its burden of establishing that the exemption to discuss strategy with

respect to collective bargaining applied to validate the session, since the evidence points to the conclusion that the committee was engaged in formulating a particular negotiating position in preparation for collective bargaining. It also was not necessary for the committee to have its labor negotiator at the meeting in order to qualify the session as having a concern with collective bargaining strategy. There undoubtedly will be instances where a committee can properly discuss its collective bargaining position and formulate a strategy in private in the absence of its bargaining representative. Nor does the fact that the minutes of the closed session were made public at an open meeting one week later subvert the judge's conclusion. This would be one factor for the judge to consider, among others, in making a determination as to the applicability of the exemption. The public disclosure of the recommendations following closely on the heels of the executive session was equally consistent with the conclusion that the committee may have desired to transmit the fact that it had frozen the salaries of the nonunion employees to the membership of the other unions and to the general public.

The statute also will not admit of the construction sought to be ascribed to it by the Attorney General with regard to the requirement contained in the exemption that there be some indication of a detriment to the governmental body if the collective bargaining strategy is to be discussed at an open meeting. The plaintiff would insist on a showing of definite harm before the meeting could be closed to explore strategy. The exemption is not written in such a rigid fashion and requires only a reasonable showing that the matters to be discussed under the rubric of collective bargaining strategy might have adverse impact on the committee's bargaining processes if publicly disclosed at an open meeting. This construction is sensible when measured against the broad range of potentially severe remedies that are available to someone

seeking enforcement of the law through § 23B when a violation is in fact found.[5]

We note, in conclusion, that other jurisdictions in similar situations have recognized under their own open meeting laws that a school committee "should, at some stage, be permitted to meet in closed session to discuss and arrive at strategy for its collective bargaining position . . . without being required to disclose every innuendo and consideration to the adversary unions." *Wexford County Prosecutor* v. *Pranger*, 83 Mich. App. Ct. 197, 203 (1978). See also *Bassett* v. *Braddock*, 262 So.2d 425 (Fla. 1972); *Jefferson County Bd. of Educ.* v. *Courier Journal*, 551 S.W.2d 25, 29 (Ky. 1977).

We therefore conclude that the judge was correct in ruling that the exemption in § 23B(3) applied to the meeting in issue here.

*Judgment affirmed.*

---

[5] Section 23B provides that if the law has been violated, the judge may invalidate any action taken at the meeting and order the records of the meeting to be made public; it further provides that "the remedy created hereby is not exclusive, but shall be in addition to every other available remedy."