District Attorney for the Northwestern Dist. *v.* Board of Selectmen of Sunderland.

DISTRICT ATTORNEY FOR THE NORTHWESTERN DISTRICT *vs.*
BOARD OF SELECTMEN OF SUNDERLAND.

Franklin. February 9, 1981. — April 7, 1981.

Present: GRANT, BROWN, & KASS, JJ.

*Open Meeting Law. Public Board.*

Where one selectman voted to go into executive session and the two re-
maining selectmen abstained, that vote did not constitute a vote of the
majority of the members of the board as required to conduct such a ses-
sion under G. L. c. 39, § 23B. [665-666]

An executive session convened by a town's board of selectmen for the pur-
pose of meeting with department heads to discuss salaries of nonunion
employees of the town did not constitute a meeting to discuss "strategy
with respect to collective bargaining" or "collective bargaining"
within the meaning of G. L. c. 39, § 23B(3). [666-667]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 31, 1979.

The case was heard by *Hayer,* J.

*Edward W. Pepyne, Jr.,* Town Counsel, for the defend-
ant.

*Philip B. Benjamin,* Special Assistant District Attorney,
for the plaintiff.

BROWN, J. In an action filed in the Superior Court the
district attorney for the Northwestern District claimed that
certain actions taken by the Sunderland board of selectmen
(board) in conducting an executive session violated the open
meeting law, G. L. c. 39, §§ 23A-23C, as amended
through St. 1978, c. 372, §§ 9-12. The complaint alleged,
and the judge so found, that the "executive session" was
unlawful for two reasons: (1) that the vote to go into ex-
ecutive session was invalid because that vote, one member
in favor of the motion and the two remaining members ab-
staining, did not constitute a vote of the majority of the

members of the board necessary to conduct such a session as required by § 23B; and (2) that a meeting with department heads for the purpose of discussing salaries of certain non-union employees of the town was not a discussion of "strategy with respect to collective bargaining" or a "collective bargaining" session within the meaning of § 23B(3).

On December 10, 1979, the board conducted a regularly scheduled meeting to discuss the fiscal year budget. All three selectmen were present. During the course of the meeting one of the selectmen moved to "go into executive session to consider collective bargaining." The motion was seconded. Discussion of the motion revealed that its purpose was to allow the heads of departments to discuss with members of the board salaries of nonunion town employees in preparation for proposed departmental budgets. Following discussion one selectman voted in favor of the motion; the other two members abstained. Based upon that vote the three members met with the department heads in executive session.[1]

While in executive session the selectmen discussed matters including salaries of individual employees and working conditions and hours of operation of the town dump. At no time during the executive session were there present any of the employees whose salaries were discussed, collective bargaining agents or other town employees.

After a hearing a judge of the Superior Court ruled that one affirmative vote was insufficient to constitute the majority required by § 23B to convene such a session. The judge also rejected the contention of the board that the executive session was conducted for collective bargaining purposes. We affirm the judgment.

---

[1] In passing we are constrained to point out that regardless of who said what when the motion was put to a vote and of how the votes were recorded, all three members of the board immediately participated in discussions from which the public was wrongfully excluded. In such circumstances we will not hesitate to go behind the formalities of a paper vote in determining whether there has been a violation of §§ 23A-23C. Cf. *Puglisi* v. *School Comm. of Whitman, ante* 142, 144-145 (1981).

1. *Executive session: majority vote.* General Laws c. 39, § 23B, manifests a general policy that all meetings of a governmental body must be open to the public unless otherwise provided by this statute. It is settled that "[t]he open meeting law is designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978).

In determining the propriety of meeting in executive session on the basis of one affirmative vote, we must examine the meaning of the § 23B language, "a majority of the members [of the board] have voted to go into executive session." We agree with the Superior Court judge that there is no ambiguity as to the meaning of "majority of the members." "The language employed is neither peculiar nor technical, but is comprised of familiar words commonly combined to express, as they do here, a simple thought. Thus we construe the [phrase] according to the common and approved use of this language." *New England Medical Center Hosp., Inc.* v. *Commissioner of Revenue,* 381 Mass. 748, 750 (1980). We apply the standard definition of majority as meaning "a number *greater* than half of a total" (emphasis supplied). Webster's Third New Intl. Dictionary 1363 (1971). All doubt disappears, and the proper interpretation becomes clear, when that definition is blended with the "almost universally accepted common-law rule . . . that . . . in the absence of a contrary statutory provision, a majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." *FTC* v. *Flotill Prod., Inc.,* 389 U.S. 179, 183 (1967). Accord, *Real Properties, Inc.* v. *Board of Appeal of Boston,* 311 Mass. 430, 434 (1942); *Merrill* v. *Lowell,* 236 Mass. 463, 467 (1920) ("in the absence of statutory restriction the general rule is that a majority of a . . . board is a quorum and a majority of the quorum can act"). "The unbroken current of authority in this Commonwealth leads to the conclusion that [the judge] was right." *Clark* v. *City Council of Waltham,* 328 Mass.

40, 41 (1951), citing the above-quoted language in *Merrill* v. *Lowell, supra.* Under no circumstances can one vote constitute a majority of a quorum of a three-member board.

2. *Executive session: collective bargaining.* The burden to show the need for a closed session rests on the governmental body. See G. L. c. 39, § 23B. The exceptions in § 23B are not to be used as a subterfuge to retreat from an open meeting into executive session. See *Puglisi* v. *School Comm. of Whitman, ante* 142, 144-145 (1981). Here we need only focus on whether the closed session fell within either of the § 23B(3) exemptions for discussion of "strategy with respect to collective bargaining" or for conducting "collective bargaining."

The board, relying on the case of *Attorney Gen.* v. *School Comm. of Taunton,* 7 Mass. App. Ct. 226, 230-231 (1979), argues that the heads of departments were appropriate bargaining representatives with whom the board could properly engage in discussions regarding wages, hours and other working conditions. The instant case, however, is completely distinguishable from the *Taunton* case. Here, unlike *Taunton,* there is nothing to indicate that the meeting with the department heads was part of a collective bargaining scheme or strategy or that the employees who were discussed were members of a collective bargaining unit or about to become such. Compare *Ghiglione, supra* at 72-73. The judge found that "the record shows that there were no collective bargaining negotiations pending at that time, and in fact no employees under the authority of the Board were represented by collective bargaining agents." Contrast *Taunton, supra,* where this court noted that the school committee had been engaged in "active negotiations" with three unions at the time of the closed meeting. *Id.* at 230. The judge also found that there was no evidence that any employees under the authority of the board were acting collectively or engaged in bargaining. Furthermore, there was no showing that the department heads had been authorized by the employees to represent them in collective bargaining. It can be fairly stated that

the record does not show that the department heads were the designated representatives or agents of any certified or recognized bargaining unit.[2] Nor was there any showing of how an open meeting might have had any detrimental effect on the bargaining position of the board.

Finally, passing over the point that the board's argument that the department heads were engaged in "concerted activity" was not raised in the ·Superior Court, we merely observe that as there was no evidence of collective action, there was a similar lack of evidence of concerted activity.

As we have decided that the executive session was unlawful for the reasons already set out, we need not address the question whether the discussion pertaining to the hours of operation of the town dump could properly have been closed.

We conclude that the judge correctly determined that the executive session here in issue was conceived in an improper manner and for an improper purpose. See *Ghiglione, supra.*

*Judgment affirmed.*

---

[2] The judge properly rejected the board's argument that the *Taunton* case applies because the employees within Sunderland's regional school system are represented by collective bargaining agents. Not only was there no evidence to suggest that the board was in any way concerned about those employees when it convened this particular executive session, there also was no showing of any relationship between those regional school system employees and the other employees within the town.