JOSHUA GERSTEIN & others[1] vs. SUPERINTENDENT SEARCH
SCREENING COMMITTEE & another[2]
(and a companion case[3]).

Middlesex. May 3, 1989. — August 2, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee*, Appointment of personnel, Open meetings.
*Public Board. Open Meeting Law. Municipal Corporations*, Open meet-
ings. *Privacy. Words*, "Deliberation."

A "screening committee" established by a school committee to conduct
preliminary screening of candidates for the position of superintendent
of schools was required to comply with the provisions of the open
meeting law, G. L. c. 39, § 23B, in interviewing the candidates. [469-
470]

Where a "screening committee" established by a school committee to con-
duct preliminary screening of candidates for the position of superintend-
ent of schools concluded, on the basis of one candidate's threatened
withdrawal, that conducting open interviews of any of the candidates
would be detrimental to obtaining qualified applicants, those interviews
were properly held in executive session as permitted under the applicable
provision of the open meeting law, G. L. c. 39, § 23B (8). [470]

In an action seeking injunctive relief against a school committee for allegedly
violating provisions of the open meeting law, G. L. c. 39, §§ 23A-23C,
in interviewing and evaluating applicants for the position of superintend-
ent of schools, the judge properly concluded that a screening committee's
review of the written materials submitted by the applicants before select-
ing candidates to be interviewed was not a "preliminary screening"
within the meaning of G. L. c. 39, § 23B (8), with the result that the
first round of interviews was properly held in executive session, as
authorized by the open meeting law. [470-472]

Plaintiffs seeking injunctive relief against a school committee for alleged
violations of the open meeting law, G. L. c. 39, §§ 23A-23C, did not
demonstrate that they were entitled to relief on the basis of several minor
procedural violations or because of alleged deficiencies in the minutes
of the meetings in question. [472-473]

---

[1] Joseph Gerstein, Ibuki Kimura, Niall Maher.

[2] School Committee of Weston.

[3] District Attorney for the Northern District *vs.* Superintendent Search
Screening Committee & another.

In the circumstances of an action seeking injunctive relief against a school
   committee for allegedly violating provisions of the open meeting law,
   G. L. c. 39, §§ 23A-23C, in interviewing and evaluating applicants for
   the position of superintendent of schools, a screening committee acting
   on behalf of the school committee was held not to have violated the
   open meeting law by withholding from public disclosure the identities
   of those candidates, considered early in the screening process, who were
   not recommended for the consideration of the school committee. [473-475]


CIVIL ACTIONS commenced in the Superior Court Department
on March 1, 1988, and March 14, 1988, respectively.

The cases were heard by *Robert J. Hallisey*, J., on motions
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Michael Fabbri*, Assistant District Attorney, for the District
Attorney for the Northern District.

*Joshua Gerstein*, pro se.

*Mary L. Marshall* for the defendants.

*James C. Heigham* for Massachusetts Newspaper Publishers
Association, amicus curiae, submitted a brief.

O'CONNOR, J. Joshua Gerstein, Joseph Gerstein, Ibuki Kim-
ura, and Niall Maher filed a complaint and request for injunctive
relief against the defendants, superintendent search screening
committee (screening committee) and the school committee of
Weston (school committee), in which they alleged that the
defendants had violated the open meeting law, G. L. c. 39,
§§ 23A-23C (1988 ed.), by interviewing and evaluating appli-
cants for the position of school superintendent while in an
"executive session" closed to the public. The district attorney
for the northern district filed a separate complaint for declara-
tory and injunctive relief against the defendants in which he
alleged the same and other open meeting law violations. The
two actions were consolidated, and the individual plaintiffs
and the district attorney (plaintiffs) filed a motion for summary
judgment. The defendants opposed those motions and them-
selves moved for summary judgment. A judge concluded that
there was no substantial question of material fact requiring

resolution by a trial. He denied the plaintiffs' motion for summary judgment and allowed the defendants' motion. The plaintiffs appealed, and we granted the defendants' application for direct appellate review.[4]

The parties stipulated to the following facts: The school committee, a "governmental body" within the meaning of the open meeting law, established the screening committee in November, 1987, "for the purpose of conducting a preliminary screening of candidates for the position of Superintendent of Weston Schools and to recommend candidates to be interviewed by the School Committee." The screening committee also was a "governmental body" within the meaning of the open meeting law. In response to advertisements, the committee received eighty-nine letters of inquiry and résumés from applicants for the position. Fourteen other individuals were referred to the screening committee from other sources. The screening committee conducted open meetings on December 8, 15, and 22, 1987, and on January 5, 1988. A quorum of the committee attended each meeting and deliberated on the eighty-nine letters of inquiry and résumés. During the course of those meetings, the screening committee decided to invite twenty-seven of the candidates who had submitted résumés, as well as the fourteen individuals who had been referred from other sources, to complete an application, answer a questionnaire, and submit a writing sample. The minutes of those meetings identify the candidates by code number rather than by name.

The screening committee convened open meetings on January 19 and 26, and February 5, 1988. A quorum of the screening committee attended those meetings and deliberated on the applications, on the completed questionnaires and on the writing samples which the invited candidates had submitted. As a result of, and during the course of, those meetings, the committee decided to interview thirteen candidates. The committee also decided that candidates' concerns about confidentiality were

---

[4] We acknowledge the brief of amicus curiae Massachusetts Newspaper Publishers Association.

important, and that its chairperson should question the candidates to determine if any of them opposed open session interviews. After the chairperson spoke to one candidate who stated that she would withdraw from consideration if interviews were held in open session, the screening committee determined that conducting open interviews of any of the candidates would be detrimental to obtaining qualified applicants. The search committee convened open session meetings on February 22, 23, 24, 25, 26, and 27, 1988. During each of those meetings, the committee convened a closed session and interviewed one or more of the thirteen candidates previously selected for interviews. During the interviews, the members asked the candidates identical prepared questions.

During the second of two meetings held on February 27, the screening committee reconvened in open session and deliberated on the merits of the candidates who had been interviewed. During the course of that meeting, the committee recommended that eight individuals be interviewed by the school committee.

The school committee met on March 16, 1988, in open session and accepted the recommendations of the screening committee. The school committee interviewed the eight candidates in several open session meetings held during March. On March 31, during an open session meeting, the school committee selected three of the eight remaining candidates as finalists. All subsequent deliberations about the three candidates were conducted in open session as was the vote to offer the position to one of the three.

General Laws c. 39, § 23B, requires that "[a]ll meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided" by that section. Section 23B also provides that executive sessions may be held only for eight specified purposes. The eighth enumerated purpose is "[t]o consider and interview applicants for employment by a preliminary screening committee or a subcommittee appointed by a governmental body if an open meeting will have a detrimental effect in obtaining qualified applicants; provided, however, that this clause shall not apply to any meeting, including meetings of a preliminary screening committee or a subcommittee appointed by a governmental body, to consider and interview applicants who have passed a prior preliminary screening." G. L. c. 39, § 23B (8), as amended

through St. 1986, c. 694. Section 23A defines the term "[e]xecutive session" as meaning "any meeting of a governmental body which is closed to certain persons for deliberation on certain matters." The term "[d]eliberation" is defined in the same section as "a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction."

The plaintiffs argue that § 23B (8) did not apply for two reasons: (1) the statement of one of thirteen candidates interviewed that she would withdraw her candidacy if she had to be interviewed in public was an insufficient basis for the screening committee's conclusion that "an open meeting will have a detrimental effect in obtaining qualified applicants" for the position of superintendent. (2) The thirteen applicants who were interviewed in executive session had already "passed a prior preliminary screening" which, by the express terms of clause (8), makes clause (8) inapplicable. The judge rejected those arguments. He noted that "[t]he Screening Committee's minutes indicate that at least one candidate had requested confidentiality. . . . The Screening Committee risked losing qualified applicants if the interviews were held in open session. Under the circumstances, it was reasonable for the Screening Committee to find that an open meeting would have a detrimental effect." The judge also concluded that the screening committee's review of applications and applicants' résumés and writing samples did not constitute a "prior preliminary screening" which would preclude the thirteen interviews being conducted in executive session.

Before addressing the plaintiffs' arguments, we briefly discuss a threshold argument made by the defendants in the Superior Court and again here that the interviews in question are not within the purview of the open meeting law. The defendants point out that the interviews consisted simply of prepared questions put by committee members to candidates and the candidates' answers. The members, the defendants say, did not engage in a "verbal exchange" with one another in an attempt to arrive at a decision. Therefore, the interviewing sessions did not constitute meetings for the purpose of "delib-

eration" within the statutory definition of that word, and therefore they did not constitute "executive sessions." Thus, goes the argument, the meetings at which the interviews took place were not governed by G. L. c. 39, § 23B. We are not persuaded by that argument. The interviews were means by which the screening committee gathered information to aid it in arriving at a decision about which candidates to recommend to the school committee. The questions asked by the committee members, supplemented by the candidates' answers, conveyed information about the candidates to the committee members present. That was enough to constitute a "verbal exchange" between the committee members within the meaning of the statute. The fact that the Legislature provided an exception to the open meeting law for certain job interviews conducted by a screening committee implies that it considered such interviews otherwise subject to that law. See G. L. c. 39, § 23B (8). We conclude that the screening committee was bound to comply with the open meeting law in conducting interviews for the position of superintendent of schools.

We turn to the plaintiffs' first contention that the statement of one candidate chosen for an interview, that she would withdraw if the interview were to be conducted in public, was inadequate support for concluding that interviews at an open meeting would "have a detrimental effect in obtaining qualified applicants." We reject the argument. Surely, the loss of even one candidate out of thirteen chosen for interviews, by limiting the pool available to the committee, is "detrimental" to the committee's task. It cannot be persuasively argued that there is no detriment until at least two or some other number of candidates have declined to participate in public interviews.

The plaintiffs' second argument is that the clause (8) exception to the open meeting law did not apply to the thirteen interviews because those candidates had already "passed a prior preliminary screening" within the meaning of that language in clause (8)'s proviso. We think the judge was right in concluding that the interviewed candidates had not "passed a prior preliminary screening" when they were interviewed. According to the parties' stipulation, the screening committee's assignment was

to screen and to recommend candidates to be interviewed by the school committee. Implicit in the charge to the committee was that the committee would recommend only candidates who had been found worthy of recommendation after the committee's full review, that is, after the candidate had "passed" the committee's "preliminary screening" prior to the school committee's involvement. The manner in which that screening would be accomplished was left to the committee. The committee chose first to review letters of inquiry and résumés, then to invite some of those candidates, plus fourteen other individuals who had been referred to the committee, to submit applications, answers to questionnaires, and writing samples, and finally to interview thirteen candidates. That preliminary screening process led to the screening committee's recommendation of eight candidates for consideration by the school committee. Only those eight candidates can be said to have "passed a preliminary screening." We reject the plaintiffs' contention that all the individuals whose candidacy survived the committee's consideration of their written materials "passed a preliminary screening" within the meaning of § 23B (8).

Section 23B specifically authorizes a preliminary screening committee to "consider and interview applicants for employment," and to do so in executive session in circumstances properly found to have existed in this case unless the applicants "have passed a prior preliminary screening." An interpretation of the proviso in clause (8) that would effectively prevent a screening committee from both considering and, in aid thereof, interviewing candidates in closed session would defeat the clear language and purpose of clause (8). Nothing in the statute suggests that "a prior preliminary screening" is limited to a one-time only review of an applicant's credentials. Indeed, as the judge recognized, if a screening committee's review of résumés and writing samples were to preclude the committee from subsequently conducting executive session interviews despite the detrimental effect public interviews might have on the committee's task, the committee would be faced with the choice either to live with the detrimental effect or to interview every applicant regardless of qualification. It is apparent that

the Legislature intended to prevent such detrimental effect, and nothing in the statute suggests that the Legislature intended to impose on municipalities the impractical, if not impossible, burden of conducting meaningless and perhaps overwhelmingly numerous interviews. See *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978). We construe clause (8)'s proviso that clause (8) shall not apply to a meeting of a preliminary screening committee to "consider and interview applicants who have passed a prior preliminary screening" to mean that, once such a committee has completed its screening, which may include more than one step and may or may not include interviews, and has voted to recommend a candidate, the process may not be repeated in executive session. Based on the statutory language, and in view of the impracticality of the statutory construction urged on us by the plaintiffs, we are satisfied that the construction we adopt fairly reflects the Legislature's determination of the appropriate balance between the public's right to be informed about public policy decision making and the necessity of not unduly hampering public officials' performance of their duties. See *Ghiglione* v. *School Comm. of Southbridge, supra* at 72-73. If, as the plaintiffs argue, the statute as we have construed it is susceptible to manipulation by government bodies in order to evade the requirements of the open meeting law, we are unwilling to assume that such manipulation will occur. In any event, we leave to legislative judgment the question whether statutory revision is required.

In addition to the matters discussed above, the plaintiffs assert that the screening committee committed other open meeting law violations — violations of a procedural nature. They say that the committee violated G. L. c. 39, § 23B, third par., by convening in executive session on several occasions without first announcing whether the committee would reconvene in open session. We agree with the judge that, in the context of this case, that violation was de minimis. *Ghiglione* v. *School Comm. of Southbridge, supra* at 74. The purpose of the announcement requirement, that is, that the public receive notice of the anticipated continuation of an interrupted open meeting, was not subverted in this case as the committee did not in fact reconvene in open session on any of those occasions.

The plaintiffs also argue that the committee failed to include in its minutes the time and place of its meetings. The record shows that the minutes in question were subsequently amended to cure the omission. Also, the plaintiffs say the minutes of the committee meetings held on January 19 and 26, and February 5 and 27, 1988, were deficient because, although they reflect that the members "rated and discussed" candidates, those minutes do not record how the members voted, as required by G. L. c. 39, § 23B, seventh par., and G. L. c. 65, § 5A (1988 ed.). No violation has been shown since nothing in the record suggests that the "rating and discussing" of candidates involved voting or that any votes were taken at those meetings.

Finally, the plaintiffs point to the fact that none of the screening committee's minutes identifies the applicants considered or discussed by that committee even though there had been no showing that the privacy concerns of any of the applicants were in issue. The plaintiffs refer the court to *Attorney Gen. v. School Comm. of Northampton*, 375 Mass. 127, 130 n.2 (1978). In that case, we held that a school committee had violated the open meeting law by failing to disclose the names of candidates for the position of superintendent of schools who had been considered by that committee in open session. The case was decided before § 23B (8) was enacted. The school committee of Northampton relied on G. L. c. 39, § 24, as amended by St. 1970, c. 78, § 2, stating that the provisions of G. L. c. 39 "shall be in force only so far as they are not inconsistent with the express provisions of any general or special law." *Id.* at 129. The school committee pointed to G. L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1, which provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy," as a law requiring the committee to withhold the names. In footnote 2, to which the present plaintiffs refer, we said: "Much the same considerations would have applied if the school committee had voted to go into executive session under the authority of G. L. c. 39, § 23B (7), as appearing in St. 1976, c. 397, § 6, which permits executive sessions '[t]o comply with the provisions of any general or special law.'"

Our conclusion in *Attorney Gen.* v. *School Comm. of Northampton, supra* at 130, that the school committee had violated the open meeting law was grounded on the committee's failure to show "as to any of the sixteen candidates considered at the open meeting that disclosure of his name would have been an unreasonable, substantial, or serious interference with his privacy." We reasoned that the judge had concluded "both that an applicant who reached that level of consideration would expect open and public consideration of his professional competence and that the reasons for protecting the identity of such candidates were less substantial than the reasons for protecting the identity of applicants who had not reached that level of consideration." *Id.* We said that "[t]he school committee's argument that forced disclosure in such circumstances will discourage certain potential future applications for such positions has merit as a policy consideration for the Legislature, but it alone cannot justify barring disclosure where the record does not show that disclosure would impinge on any candidate's statutory right of privacy" (footnote omitted). *Id.*

The present case, unlike *Attorney Gen.* v. *School Comm. of Northampton, supra*, does not involve a school committee's withholding of names of candidates considered by the school committee. Rather, this case raises the question whether the screening committee violated the open meeting law by withholding the names of individuals it considered during the preliminary screening process. We suggested in *Attorney Gen.* v. *School Comm. of Northampton, supra* at 130, that there are substantial reasons for protecting the identity of individuals who were candidates only early in the process. Furthermore, the addition of clause (8) to G. L. c. 39, § 23B, as amended through St. 1986, c. 694, demonstrates the Legislature's endorsement of such confidentiality. Consequently, even though the screening committee's meetings through February 5, 1988, were open meetings, we decline to order the disclosure of the identities of those candidates who were considered only by the screening committee and not by the school committee.

*Judgment affirmed.*