455 Mass. 561 (2009)                                            561

District Attorney for the Northern District *v.* School Committee of Wayland.

DISTRICT ATTORNEY FOR THE NORTHERN DISTRICT *vs.*
SCHOOL COMMITTEE OF WAYLAND.

Middlesex. November 2, 2009. - December 31, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*School and School Committee,* Open meetings, Superintendent of schools,
Public record. *Municipal Corporations,* Open meetings, Public record.
*Practice, Civil,* Summary judgment. *Statute,* Construction. *Public Records.*
*Electronic Mail.*

In a civil action alleging violations of the open meeting law, G. L. c. 39,
§§ 23A-24, a Superior Court judge erroneously entered summary judg-
ment and declaratory judgment for the defendant school committee (com-
mittee), where the committee failed to bear its burden of showing that it
properly entered into executive sessions at two open meetings, for permis-
sible purposes under the open meeting law, given that the committee gave
no precise statements during the open meetings of the reasons for conven-
ing in executive sessions (i.e., that it would consider the contract renewal
or salary of the superintendent of schools) and discussed, during the execu-
tive sessions, only the superintendent's professional competence, rather than
his contract renewal or salary [566-569]; further, an exchange of electronic
mail messages between the committee chair and committee members, where
one member sent written comments to the entire committee, and two other
members sent written comments directly to the chair, and the members' com-
ments were compiled into a draft evaluation of the superintendent's
performance and circulated in advance of an open meeting, amounted to
deliberation that violated the open meeting law; accordingly, this court held
that the committee was required to release the committee members' written
comments and make them available to the public [569-572].
Discussion of the proper procedure to be used by a school committee, in light
of the requirements of both the open meeting law and the public records
law, when meeting in open session to discuss the professional competence
of an individual, and when voting to adjourn to an executive session to
comply with the provisions of the public records law. [569]

CIVIL ACTION commenced in the Superior Court Department on
December 14, 2006.

The case was heard by *Leila R. Kern,* J., on motions for sum-
mary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Robert J. Bender*, Assistant District Attorney (*Bethany Stevens*, Assistant District Attorney, with him) for the plaintiff.

*Regina Williams Tate* (*Kevin F. Bresnahan* with her) for the defendant.

The following submitted briefs for amici curiae:

*Michael J. Long* for Massachusetts Association of School Superintendents.

*Brian W. Riley* for Massachusetts Municipal Association.

*Stephen J. Finnegan* for Massachusetts Association of School Committees, Inc.

*Robert J. Ambrogi & Peter J. Caruso* for Massachusetts Newspaper Publishers Association.

SPINA, J. The district attorney for the Northern District initiated a civil action against the school committee of Wayland for violations of the open meeting law, G. L. c. 39, §§ 23A-24. The district attorney alleged that the school committee violated the open meeting law during two executive sessions and in communicating via electronic mail messages (e-mails) prior to an open meeting. The school committee answered that (1) it properly deliberated in executive sessions to conduct "contract negotiations with nonunion personnel," based on the superintendent's contract terms, and (2) preliminary e-mail communications between the school committee members were not considered "records of a meeting" and were appropriate under the open meeting law. The parties filed cross motions for summary judgment. A judge in the Superior Court denied the district attorney's motion, allowed the school committee's motion, and entered declaratory judgment in the school committee's favor, declaring that the school committee did not violate the open meeting law. We transferred the case from the Appeals Court to this court on our own motion.[1] We vacate the summary judgment and declaratory judgment entered for the school committee in this case and remand to the Superior Court for the entry of summary judgment for the district attorney, and a declaratory judgment is to enter as appearing herein.

1. *Statutory framework.* The open meeting law, G. L. c. 39,

---

[1]We acknowledge the amicus briefs filed by the Massachusetts Newspaper Publishers Association; the Massachusetts Municipal Association; the Massachusetts Association of School Superintendents; and the Massachusetts Association of School Committees, Inc.

§§ 23A-23C, as it applies to the school committee, was created by St. 1975, c. 303, § 3.[2]

The open meeting law reflects a general policy that all meetings of a governmental body should be open to the public unless exempted by the statute. *Attorney Gen.* v. *School Comm. of Taunton,* 7 Mass. App. Ct. 226, 229 (1979). The Legislature designed the open meeting law "to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978). To that end, G. L. c. 39, § 23B, second par., provides: "No quorum of a governmental body shall meet in private for the purpose of deciding on or deliberating toward a decision on any matter except as provided by this section."

However, the Legislature has recognized that "not everything done by public officials and employees can or should occur in a public meeting." *McCrea* v. *Flaherty,* 71 Mass. App. Ct. 637, 640 (2008). Accordingly, § 23B lists ten specific exceptions that allow a governmental body to convene in a private executive session. There are three exceptions that are applicable in this case:

> "Executive sessions may be held only for the following purposes:
>
>> "(1) To discuss the reputation, character, physical condition or mental health *rather than the professional competence of an individual* . . . .
>>
>> "(3) To discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the governmental body, *to conduct strategy sessions in preparation for negotiations with nonunion*

---

[2]On July 1, 2009, the Legislature amended G. L. c. 30A, the Administrative Procedure Act, St. 2009, c. 28, §§ 18-20, effective July 1, 2010. The 2009 amendments make numerous changes in the existing law. Among others, the amended statute places responsibility for enforcement of the open meeting law with the Office of the Attorney General for State, regional, county, municipal, and all other governmental bodies. G. L. c. 30A, §§ 19 (*a*), 23 (*a*), 24 (*a*), inserted by St. 2009, c. 28, § 18. It also addresses the definition of "deliberations" and sets forth exemptions to the public records law. G. L. c. 30A, §§ 18, 22 (*e*), inserted by St. 2009, c. 28, § 18. Because the events at issue took place in 2004, we do not purport to interpret the amended statute.

*personnel*, to conduct collective bargaining sessions or contract negotiations with nonunion personnel . . . .

"(7) To comply with the provisions of any general or special law or federal grant-in-aid requirements." (Emphasis added.)

G. L. c. 39, § 23B (1), (3), (7).

The open meeting law also requires a governmental body to follow certain procedures before entering an executive session. These procedures require: "No executive session shall be held until the governmental body has first convened in an open session for which notice has been given, a majority of the members have voted to go into executive session and the vote of each member is recorded on a roll call vote and entered into the minutes, the presiding officer has cited the purpose for an executive session, and the presiding officer has stated before the executive session if the governmental body will reconvene after the executive session." G. L. c. 39, § 23B, third par.

2. *Facts.* We summarize the undisputed material facts. The school committee is comprised of five members, and has the powers and duties set forth in G. L. c. 71, § 37. Among these are the duty "to select and to terminate the superintendent" and "to fix [the superintendent's] compensation." G. L. c. 71, §§ 37, 59.

On June 2, 2004, Jeff R. Dieffenbach, the school committee chair, contacted the other members of the school committee via e-mail.[3] In that message, he sought input from school committee members on the performance of the superintendent of schools, Gary Burton. The e-mail set forth various topics on which the school committee members were requested to comment. Lori C. Frieling and Heather Pineault each created written comments pertaining to Burton's performance and forwarded them directly to Dieffenbach. Dr. Frederick K. Knight created written comments pertaining to Burton's performance and forwarded them to the entire school committee via e-mail. Robert B. Gordon did not create any written comments. From those written comments,

---

[3]The members of the school committee at that time were Jeff R. Dieffenbach, Lori C. Frieling, Robert B. Gordon, Dr. Frederick K. Knight, and Heather Pineault.

Dieffenbach prepared a draft evaluation for discussion at the school committee meeting scheduled for June 21, 2004, and distributed a draft evaluation to the members of the school committee in advance of that date.

On June 21, 2004, the school committee convened in open session, and then voted to convene in executive session "for purposes of matters relating to Collective Bargaining as set forth in [G. L. c. 39, § 23B]." After discussing collective bargaining and other issues, Burton left the executive session, and the school committee turned to Burton's annual evaluation. After twelve minutes of discussion, the school committee adjourned from the executive session. On June 28, 2004, the school committee convened in open session, and then immediately voted to convene in executive session "for purposes of matters relating to Collective Bargaining and Personnel as set forth in [G. L. c. 39, § 23B]." During the executive session, after discussing other matters, the school committee discussed Burton's draft evaluation.

On May 12, 2005, a newspaper reporter for the Wayland Town Crier filed a complaint with the district attorney alleging that the process by which the school committee evaluated the superintendent and the school committee's refusal to release the evaluation of Burton violated the open meeting law. The district attorney determined that the school committee "violated the [o]pen [m]eeting [l]aw by conducting the [s]uperintendent's performance evaluation outside of the public view," and ordered the school committee to make the draft evaluation, all written or electronic comments, and the final written evaluation available to the public. The district attorney also ordered the school committee to amend the minutes of its June 21 and June 28, 2004, meetings to reflect the substance of the discussions that took place in executive session regarding Burton's performance evaluation.

In response to the district attorney's letter, and with the consent of Burton, the school committee made the written draft evaluation and final evaluation documents available to the public. The school committee also amended the minutes of the June 21 and June 28, 2004, executive sessions, but to indicate only that Burton was not present during the discussion of the draft evaluation and that "[t]he substance of the results of that discussion may be found in the final [s]uperintendent's evaluation as compared

with the draft evaluation." Finally, the school committee made public the written comments of Knight, who had forwarded his comments to the entire school committee via e-mail, but declined to release the written comments of Frieling and Pineault.

3. *Standard of review.* This court reviews a grant of summary judgment de novo, *Miller* v. *Cotter,* 448 Mass. 671, 676 (2007), to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). The court need not rely on the rationale cited and "may consider any ground supporting the judgment." *Id.*

4. *June 21 and June 28, 2004, executive sessions.* The district attorney asserts that the school committee violated the open meeting law by meeting in executive session on June 21 and June 28, 2004, to discuss the "professional competence" of the superintendent. The judge determined that the school committee properly entered into executive session on both dates, pursuant to § 23B (3), to discuss matters relating to collective bargaining and negotiations with nonunion personnel, among them the superintendent's evaluation and salary. We disagree.

"The burden to show the need for a closed session rests on the governmental body." *District Attorney for the Northwestern Dist.* v. *Selectmen of Sunderland,* 11 Mass. App. Ct. 663, 666 (1981). The exceptions in § 23B allowing a governmental body to meet in executive session may not be used to circumvent the requirements of the open meeting law. See *id.* ("The exceptions in § 23B are not to be used as a subterfuge to retreat from an open meeting into an executive session"). The meeting minutes indicate that on June 21 and June 28, 2004, the school committee, after convening in an open meeting, voted to retire into executive session, "for purposes of matters relating to Collective Bargaining," and "for purposes of matters relating to Collective Bargaining and Personnel," respectively.

The school committee committed two errors here. First, collective bargaining does not cover the superintendent, as he is not a union employee. "Purpose 3" of § 23B, which states that a governmental body may convene in executive session "to conduct strategy sessions in preparation for negotiations with nonunion personnel," would allow the school committee to enter into

executive session to discuss the Superintendent's contract renewal or salary. However, there is no indication in the open meeting minutes that the executive sessions would consider the superintendent's contract renewal or salary. A precise statement of the reason for convening in executive session is necessary under the open meeting law because that is the only notification given to the public that the school committee would conduct business in private, and the only way the public would know if the reason for doing so was proper or improper. Therefore, the school committee's votes to enter into executive session to consider "collective bargaining" or "collective bargaining and personnel" were not proper.

Second, the executive session minutes from June 28, 2004, state that the school committee "discussed the draft document of the [s]uperintendent's evaluation." Even had the purpose of the executive session been correctly stated to include "to conduct strategy sessions in preparation for negotiations with nonunion personnel," there is no indication that the school committee discussed the superintendent's contract renewal or salary at either executive session — it appears that only professional competence was discussed.[4]

Viewing the evidence in the light most favorable to the district attorney, and drawing all reasonable inferences in his favor, we conclude that the school committee failed to bear its burden of showing that it properly entered into executive sessions on June 21 and June 28, 2004, for one of the permissible purposes

[4]The superintendent's contract submitted into the record was dated March 21, 2005, governing the three-year period from July 1, 2004, to June 30, 2007. The executive sessions at issue in this case took place in June of 2004, nine months before the contract was signed, and concerned Burton's performance in 2003-2004. While the 2004-2007 contract includes a provision requiring the school committee to prepare a written evaluation of Burton for the purposes of determining his salary for the next year, there is no contract in the record governing the time period at issue in this case. Moreover, neither the draft evaluation nor the final evaluation indicates in any way that the school committee discussed its position on the superintendent's contract or compensation. While the school committee chairman, when requesting feedback from other members regarding Burton's professional competence, stated that one of the goals of the evaluation was to "[p]rovide information to help the [s]chool [c]ommittee determine the [s]uperintendent's compensation," there is no evidence in the record suggesting that the superintendent's contract renewal or compensation for either the 2003-2004 or the 2004-2005 school years was tied in any way to his performance evaluation for the 2003-2004 year.

delineated in § 23B, fourth par. See *District Attorney for the Northwestern Dist.* v. *Selectmen of Sunderland*, 11 Mass. App. Ct. 663, 666 (1981) (finding no evidence to indicate that executive session was part of collective bargaining strategy, despite stated reason for executive session). The undisputed evidence does show that, with respect to Burton, the school committee limited its discussion in executive session to his professional competence, which, under § 23B (1), must be deliberated in open session. Accordingly, the meetings on June 21 and June 28, 2004, violated the open meeting law.

Where a school committee is doing an evaluation of a superintendent as part of, or as a demonstrably linked prelude to, its contract or salary negotiations with the superintendent, a nonunion employee, then the executive session provision in § 23B (3) may apply. While professional competence must first be discussed in an open session, how that evaluation will factor into a contract or salary negotiation strategy may be suitable discussion for an executive session. However, as we have stated, there is no evidence here indicating that this is what occurred.

While a school committee's deliberation of the superintendent's professional competence must take place in an open session, written performance evaluations, whether draft or final, are not a public record, and are not required to be made available to the public. Employee work evaluations are exempt from public disclosure under the public records law, G. L. c. 66, § 10, pursuant to G. L. c. 4, § 7, Twenty-sixth (*c*). In *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, 431 Mass. 792 (2000), we held that a disciplinary decision and report of the superintendent of Wakefield public schools regarding the performance of a Wakefield public school teacher was exempt from disclosure under the public records law. While that decision did not invoke the open meeting law, it held that the term "personnel [file] or information" includes, "at a minimum, employment applications, *employee work evaluations*, disciplinary documentation, and promotion, demotion, or termination information pertaining to a particular employee" (emphasis added). *Id.* at 798.

Where possible, we construe statutes on the same subject matter together, "so as to constitute a harmonious whole consistent with the legislative purpose." *Board of Educ.* v. *Assessor of*

*Worcester*, 368 Mass. 511, 513-514 (1975). See *Sullivan* v. *Chief Justice for Admin. & Mgt. of the Trial Court*, 448 Mass. 15, 27 (2006) ("Preference is given to a harmonious reading of statutes"). "If reasonably practicable and there is no positive repugnancy, a rational and workable effect must be given to both statutes, to the end that there may be a harmonious and consistent body of legislation." *Yaro* v. *Board of Appeals of Newburyport*, 10 Mass. App. Ct. 587, 589 (1980), quoting *Smith* v. *Director of Civil Serv.*, 324 Mass. 455, 458 (1949).

Here, the open meeting law expressly directs the school committee to convene in open session to discuss the professional competence of an individual. G. L. c. 39, § 23B (1). However, the public records law explicitly exempts employee work evaluations from public disclosure. G. L. c. 66, § 10, pursuant to G. L. c. 4, § 7, Twenty-sixth (*c*). In light of the requirements of both the open meeting law and the public records law, the correct procedure in this case would have been for the school committee to meet in open session to discuss the professional competence of the superintendent. When the school committee reached the state of deliberations where the preparation and drafting of the written performance evaluation was imminent, it should have voted to adjourn to an executive session under G. L. c. 39, § 23B (7), which allows a governmental body to meet in executive session to comply with the provisions of any general or special law, here, the public records law.[5] Although the school committee, with the approval of the superintendent, did make the draft and final performance evaluations available to the public in this case, this was not necessary. Without the superintendent's consent, the performance evaluation would be absolutely exempt from disclosure. See *Wakefield Teachers Ass'n* v. *School Comm. of Wakefield*, *supra* at 798-800.

5. *Private written communication prior to an open meeting.* The district attorney argues that e-mail messages between individual members of the school committee to the school com-

---

[5]This issue is partially addressed by the 2009 amendment, which makes the following materials, attached to the minutes of an open session, specifically exempt from disclosure: "[M]aterials used in a performance evaluation of an individual bearing on his professional competence, provided they were not created by the members of the body for the purposes of the evaluation." G. L. c. 30A, § 22 (*e*), inserted by St. 2009, c. 28, § 18. See note 2, *supra*.

mittee chair were improper "deliberation[s]" under the open meeting law, as the exchanges concerned the professional competence of the superintendent and were not open to the public. We hold that, while some of these exchanges were not between a quorum of members, and therefore were not strictly "deliberation," they had the effect of circumventing the requirements of the open meeting law and must be made available to the public.

The open meeting law defines "[d]eliberation" as "a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction." G. L. c. 39, § 23A. Open meetings provide an opportunity for each member of the governmental body to debate the issues and disclose their personal viewpoints before the governmental body reaches its decision on a matter of public policy. They also provide an opportunity for members of the public to hear the opinions of the members of the governmental body.

Here, prior to convening in an open session on June 21, 2004, the school committee chair sent an e-mail to the members of the school committee, requesting that they send him written comments "pertaining to the [s]uperintendent's performance evaluation." One member replied to the entire school committee, and two members replied directly to the chair of the school committee. The comments of the individual members were compiled into the draft evaluation. The school committee chair then circulated a draft evaluation in advance of the next school committee meeting.

This exchange was a deliberation that violated the open meeting law. An executive session may not be held until the deliberating body has conducted an open meeting. G. L. c. 39, § 23B, third par. "It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials *and to the way in which the decisions are reached*" (emphasis added). *Foudy* v. *Amherst-Pelham Regional Sch. Comm.*, 402 Mass. 179, 184 (1988). Here, prior to conducting an open meeting, the school committee commenced a private e-mail exchange in order to deliberate the superintendent's professional competence. This violated the letter and spirit of the open meeting law. Governmental bodies may not circumvent the requirements of the open meeting law by conducting delibera-

tions via private messages, whether electronically, in person, over the telephone, or in any other form.[6]

This court and the Appeals Court have held, in numerous cases, that a governmental body may not avoid the requirements of the open meeting law. In *McCrea* v. *Flaherty,* 71 Mass. App. Ct. 637, 648-649 (2008), the Boston city council attempted to rotate intentionally the presence of council members to avoid a quorum during a discussion of urban renewal plans. The city council argued that "deliberation between seven or more members for the purpose of arriving, in private, at a decision on public business within the council's jurisdiction is legally permissible so long as no more than six members are allowed in the same room at the same time." *Id.* at 649. The Appeals Court found that this argument was "asserted for the sole purpose of defeating the fundamental purpose of the law." *Id.* The deliberations were required to be conducted in an open meeting, as set forth in G. L. c. 39, §§ 23A-23C. *Id.*

Similarly, in *Gerstein* v. *Superintendent Search Screening Comm.,* 405 Mass. 465, 469-470 (1989), this court held that interviews consisting of prepared questions asked by committee members, and the candidates' answers, were "deliberations," as the information gathered was sufficient to constitute a "verbal exchange" between the committee members. Accordingly, the committee was bound to comply with the open meeting law. *Id.* at 470.

Here, the school committee, although required by law to discuss the professional competence of the superintendent in open session, began deliberations regarding this topic in private via e-mail, prior to the commencement of an open meeting.[7] These written comments of the individual members are not protected

---

[6]The open meeting law, as amended in 2009, defines "[d]eliberation" as "an oral or written communication through any medium, including electronic mail, between or among a quorum of a public body on any public business within its jurisdiction; provided, however, that 'deliberation' shall not include the distribution of a meeting agenda, scheduling information or distribution of other procedural meeting or the distribution of reports or documents that may be discussed at a meeting, provided that no opinion of a member is expressed." G. L. c. 30A, § 18, inserted by St. 2009, c. 28, § 18 (effective July 1, 2010). See note 2, *supra.*

[7]While "deliberation" requires a "verbal exchange," it cannot be avoided by committing the required exchange to writing, as was done here. Cf. *Gerstein* v. *Superintendent Search Screening Comm.,* 405 Mass. 465, 470 (1989).

in this case, as we must presume the substance of the written comments would have been stated orally at an open meeting in which the superintendent's professional competence was discussed.[8] The mechanism used here, however, was an improper attempt to avoid a public discussion of the superintendent's professional competence in an open meeting, and was not in compliance with the open meeting law. Accordingly, the school committee is required to release each member's written comments and make them available to the public.[9]

6. *Conclusion.* For the foregoing reasons, the judgment of the Superior Court is reversed, and the case is remanded for the entry of summary judgment for the district attorney. In addition, a declaratory judgment is to enter stating:

> "The school committee of Wayland violated the open meeting law when it deliberated the professional competence of the Superintendent in an executive session. The school committee is required to make written comments from individual school committee members available to the public. The school committee must deliberate the professional competence of any individual in open session, in accordance with G. L. c. 39, § 23B (1), but draft or final written performance evaluations are exempt from disclosure, pursuant to the public records law, G. L. c. 66, § 10, and G. L. c. 4, § 7, Twenty-sixth (*c*)."

*So ordered.*

---

[8]If, however, the school committee had met as required by law in an open meeting to discuss the superintendent's professional competence, it then could have moved into a proper executive session to draft the evaluation.

[9]The Superior Court judge found that, even if the e-mail communications were deliberations, this was cured by the release of the minutes of the June 21 and June 28, 2004, executive sessions and the draft and final evaluations. The district attorney argues that, at this point in time, release of the written e-mail correspondence is the only way to "cure" the improper deliberations held by the school committee and the improper executive sessions held by the school committee. We agree with the district attorney that, in order to cure the violation, the school committee must release the written comments of the individual school board members.