KEVIN McCREA & others[1] vs. MICHAEL F. FLAHERTY
& another.[2]

No. 07-P-224.

Suffolk. December 6, 2007. - May 1, 2008.

Present: COHEN, KAFKER, & GRAINGER, JJ.

*Open Meeting Law. Municipal Corporations,* Open meetings.

Discussion of the purpose of the open meeting law, G. L. c. 39, §§ 23A-23C, and the manner in which the Legislature has chosen to carry out that purpose. [640-642]

In an action brought by three residents of the city of Boston against the city council and its president, alleging multiple violations of the open meeting law, G. L. c. 39, §§ 23A-23C, the trial judge, in deciding the defendants' motion for summary judgment, correctly found that a subsequent council meeting did not constitute "independent deliberative action" sufficient to effect a cure under the law for alleged violations arising from earlier council meetings [642-645]; however, the trial record was insufficient to permit an appellate determination whether the judge erred in rendering summary judgment in favor of the plaintiffs on the issue whether the subsequent council meeting itself complied with the open meeting law [645-646].

In an action brought by three residents of the city of Boston against the city council and its president, alleging multiple violations of the open meeting law, G. L. c. 39, §§ 23A-23C, the trial judge, in deciding the defendants' motion for summary judgment, did not have an adequate basis to grant summary judgment in favor of the plaintiffs on issues on which the parties had been given no opportunity to submit affidavits or related materials. [646-648]

Discussion of the possible issues arising, on remand, of an action alleging multiple violations of the open meeting law, G. L. c. 39, §§ 23A-23C. [648-649]

In an action brought by three residents of the city of Boston against the city council and its president, alleging multiple violations of the open meeting law, G. L. c. 39, §§ 23A-23C, the judge did not err in concluding that a violation occurred where the council failed to file a notice of a meeting to which all councillors were invited to gather information to aid them in arriving at a decision on a subject within the council's jurisdiction (i.e., the safety implications of a proposed biolaboratory), and the fact that, by chance, less than a quorum of councillors actually attended did not excuse the failure of notice. [650-651]

[1]Shirley Kressel and Kathleen Devine.
[2]City Council of Boston.

CIVIL ACTION commenced in the Superior Court Department on May 6, 2005.

The case was heard by *Nancy Staffier-Holtz,* J., on a motion for summary judgment.

*Rory FitzPatrick (William G. Potter* with him) for the defendants.

*Kathleen Devine,* pro se.

*Shirley Kressel,* pro se, was present but did not argue.

GRAINGER, J. The city council of Boston (council) finds itself, not for the first time, on the losing end of a determination that it has improperly excluded the public from its deliberations. Specifically, the defendants, Michael Flaherty in his capacity as president of the council and the council itself, appeal the grant of summary judgment in favor of the plaintiffs, three residents of Boston who complained of multiple violations of the open meeting law, G. L. c. 39, §§ 23A-23C.

*Background.* The complaint, amended for reasons not germane here, alleged repeated violations of the open meeting law from 2003 through 2005. The plaintiffs asserted that on at least ten separate occasions the defendants met to discuss public issues falling within the council's supervision, control, jurisdiction, or advisory power as set forth in § 23A of the statute, but without providing public notice or public access to the meetings as required by § 23B.[3] The plaintiffs alleged that six private meetings were held in violation of the statute between June 3,

---

[3]The complaint alleged that meetings in violation of the open meeting law occurred on the following dates: June 3, 2003; June 19, 2003; August 14, 2003; September 23, 2004; October 21, 2004; November 18, 2004; January 13, 2005; January 20, 2005; February 17, 2005; and March 24, 2005. Some of these meeting dates are listed in the body of the complaint while others are incorporated by attachments to the complaint.

In addition, the plaintiffs sought to invalidate a vote taken by the council at a public meeting on December 15, 2004, on the ground that the subject matter of the vote was discussed and decisions were made at the earlier meetings held in violation of the statute. The defendants filed a motion to dismiss, which a judge of the Superior Court granted in part, dismissing the plaintiffs' request for invalidation of the vote taken at the December 15 meeting, because the plaintiffs did not file their action within the twenty-one day time period mandated by G. L. c. 39, § 23B. The plaintiffs have not appealed from that ruling. The legality of the December 15 meeting, however, remains an issue on appeal: the defendants appeal from the determination of a second judge on summary judgment that this meeting failed to cure any prior violations of the

2003, and the end of 2004 to deliberate on the subject of extending Boston's urban renewal plans as administered by the Boston Redevelopment Authority (BRA). Further, they alleged that on January 20, 2005, the council held a meeting to discuss a tularemia[4] outbreak at the Boston University biolaboratory, again excluding the public from its discussion of a matter of public import in violation of the open meeting law. Finally, the plaintiffs alleged that three more BRA-related meetings, on January 13, February 17, and March 24, 2005, violated the statute. In addition to their request for invalidation of the council's vote on December 15, 2004, approving the extension of the BRA urban renewal plans, see note 3, *supra*, the plaintiffs sought injunctive relief directing the council to comply with the statute, and their costs for bringing the action.

At issue in this appeal is the ruling on the defendants' motion for summary judgment. The motion was premised on two theories: (1) that the meeting held on December 15, 2004 (see note 3, *supra*), was properly noticed and thus "cured" any prior lack of compliance in the previous six meetings, and (2) that the four meetings held after that date were not subject to the open meeting requirement, either because there was no quorum present, because they did not concern any matter over which the council had "supervision, control, jurisdiction or advisory power," or because, in the case of the three meetings concerning urban renewal, they were scheduled by the director of the BRA rather than by the council, and thus were not a "corporal convening . . . of a governmental body." G. L. c. 39, § 23A, inserted by St. 1975, c. 303, § 3.

The motion judge denied the defendants' motion and, moreover, rendered summary judgment for the plaintiffs. See Mass. R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). The judge declared that the council had violated the statute on eleven occasions,[5] and imposed a fine of $1,000 for each violation. The judge further issued an injunction stating: "The Boston City

---

open meeting law, and that the December 15 meeting itself violated the statute. See discussion, *infra*, part 1(a).

[4]Tularemia is an illness caused by the bacterium Francisella tularensis. *Allen* v. *Boston Redev. Authy.*, 450 Mass. 242, 252 n.18 (2007).

[5]The eleven violations consisted of the ten occasions listed in note 3, *supra*, and the one additional meeting on December 15, 2004.

Council and any committee thereof shall comply with the requirements of the Open Meeting Law, G. L. c. 39, Section 23B in the future. This shall include compliance with the requirements relating to executive session . . . ."

The defendants appeal. We refer to additional facts and the parties' affidavits as they become pertinent to the issues.

*Discussion.* We begin with the familiar principle that "[t]he standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c). "[The reviewing court] may consider any ground supporting the judgment." *Augat, Inc., supra* at 120. Our review of the judge's legal conclusions is de novo. *Maffei* v. *Roman Catholic Archbishop of Boston*, 449 Mass. 235, 243 (2007), cert. denied, 128 S. Ct. 907 (2008).

The defendants have raised issues and asserted arguments based on the language of, and interaction between, specific provisions of the statute. It is therefore necessary to consider the purpose of the law, and the manner in which the Legislature has chosen to carry out that purpose. We begin with the presumption of public access to the workings of government: "All meetings of a governmental body shall be open to the public." G. L. c. 39, § 23B, first par., as appearing in St. 1976, c. 397, § 6. The requirement of public access requires a meaningful opportunity, created in advance, for public presence: "[N]otice of every meeting of any governmental body shall be filed with the clerk of the city . . . in which the body acts, and the notice or a copy thereof shall, at least forty-eight hours . . . prior to such meeting, be publicly posted in the office of such clerk or on the principal official bulletin board of such city." G. L. c. 39, § 23B, sixth par.

The Legislature has recognized that not everything done by public officials and employees can or should occur in a public meeting. Public officials confer routinely on administrative and logistical matters, and meet on occasion for purposes unrelated to their public function. Furthermore, disclosure of certain matters is

not always in the public interest.[6] Therefore, the Legislature has created exceptions to the presumption of access. These are found in the executive session provisions of § 23B and in § 23A's definitions of statutory terms.

In order for a "meeting" to occur there must be "a corporal convening and deliberation" by a governmental body. G. L. c. 39, § 23A. "Deliberation," in turn, requires a "verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction." *Ibid.* Thus, gatherings unconnected to the consideration of public business and small groups of officials that do not meet the minimum number required to conduct public business are exempted. These exceptions, which are generally crafted to avoid "unduly hamper[ing]" public officials in performing their duties, *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. 70, 72 (1978); see G. L. c. 39, § 23B, fourth par., are construed narrowly in keeping with the law's overriding purpose, and we decline to imply further exceptions. See *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. 629, 632-633 (1985).

Moreover, the statute provides for public access to the decision-making process when it is in a formative stage, several steps removed from the eventual result. Thus the "verbal exchange" requirement of § 23A has been found to be satisfied by a session in which the body "gather[s] information to aid it in arriving at a decision." *Gerstein* v. *Superintendent Search Screening Comm.*, 405 Mass. 465, 470 (1989) (where screening committee was charged with recommending candidates, interviews consisting of "questions asked by the committee members, supplemented by the candidates' answers, conveyed information about the candidates to the committee members present" and thus constituted "verbal exchange"). See *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. at 634 n.6 (consultation of board with its attorney regarding proposed contract was "meeting"). In sum, courts will generally construe the provisions of open meeting laws liberally to reflect their pur-

---

[6]Examples are the prospective purchase of property by a public body where disclosure can drive up the price, and adverse personnel decisions involving privacy rights of government employees. See G. L. c. 39, § 23B, fourth par.

pose of "eliminat[ing] much of the secrecy surrounding the deliberations and discussions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. at 72. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 806 n.9 (1999).

With this background in mind, we examine the issues as they arise in connection with each meeting, or group of meetings.

1. *The BRA meetings.* (a) *Did the meeting of December 15, 2004, "cure" the previous meetings?* Relying principally on *Benevolent & Protective Order of Elks, Lodge No. 65* v. *City Council of Lawrence*, 403 Mass. 563 (1988), the defendants argued that the December 15, 2004, meeting, at which the council voted in favor of the BRA proposal, "cured" the previous violations of which the plaintiffs have complained. In *Elks*, the Supreme Judicial Court concluded that two properly noticed public meetings, which followed violations that may have occurred when the president of the city council privately conversed with other city council members, "made unnecessary an order [pursuant to § 23B], requested three months later, requiring that the meetings be open." *Id.* at 566. Later case law has further recognized that violations of the open meeting law may be cured by subsequent "independent deliberative action" taken in a full meeting. *Pearson* v. *Selectmen of Longmeadow*, 49 Mass. App. Ct. 119, 125 (2000). See *Allen* v. *Selectmen of Belmont*, 58 Mass. App. Ct. 715, 718, 720 (2003). Such independent deliberative action "help[s] to accomplish the purpose of the open meeting law." *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 558 (1988). See *Pearson, supra* at 125 n.9. However, where the subsequent meeting is "merely a ceremonial acceptance" or "a perfunctory ratification of secret decisions," it plainly does not help to accomplish the purpose of the open meeting law, and will not operate as a cure. *Id.* at 125, quoting from *Tolar* v. *School Bd. of Liberty County*, 398 So. 2d 427, 429 (Fla. 1981).

Although the defendants rely upon the *Elks* line of cases, they submitted scant evidence bearing on the nature of the December 15 meeting. The plaintiffs, on the other hand, have submitted evidence that the order ultimately voted on during the December 15 meeting was not circulated to all of the councillors before that

day and that the version ultimately approved was substantially different from what had been discussed at earlier meetings.[7] Specifically, the plaintiffs submitted evidence that a vote was not previously planned or scheduled for that meeting, and that aside from a brief opportunity to pose factual questions to the BRA director, there was no chance to conduct deliberations during the course of the public meeting. As the plaintiffs' transcript of the meeting reflects,[8] councillor Kelly, chair of the council's planning and economic development committee, introduced the order by making candid references to deliberations that did not include the public: "The last ten days, maybe two weeks, has been a very time-consuming period to address the urban renewal matter before the body. Today was probably the most interesting day in my political career. I think we have reached an agreement." He also thanked "all of the councillors for their input" and described their previous discussions. It is not disputed that these earlier discussions, including some that occurred that day, were private, and that the agreement presented at the meeting was the result. Once councillor Kelly finished describing the agreement, other councillors objected, complaining that the order "is very different to what was submitted" and arguing that a vote should not be taken. Flaherty then briefly recessed the council meeting for a "committee of the whole" hearing, stating, "It is now five minutes before 6:00 P.M. This committee hearing will begin and will conclude at 6:15." The purpose of the committee of the whole session was "for councillors who have any unanswered questions for the [BRA]" to ask those questions. A brief question and answer period was permitted by Flaherty, who "said he would not allow a wide-ranging debate [and] wished to keep a tight hold on the

---

[7] On October 26, 2004, the mayor transmitted to the council a proposed order concerning "Urban Renewal Plan extension and the Council's role in Plan modification." Members of the council were advised a day or two before their December 15 meeting that "there would be a set of meetings to discuss the pending Urban Renewal legislation, and offering two or three times for different groups of Councilors to meet." At the December 15 meeting, the council was presented with a substitute order. The substitute order was substantially different from the order originally submitted on October 26.

[8] The plaintiffs transcribed the council's videotape of the December 15 meeting. The transcript was before the motion judge and was made part of the record on appeal through the filing of a supplemental appendix.

time spent in this questioning."[9] Councillors then stood up, asked questions, and explained their positions, often referring to the difficult discussions and deliberations that occurred in previous meetings not open to the public. In addition to the above, the plaintiffs submitted affidavits that suggested that the councillors met privately during the course of the meeting. The particulars of any such alleged private meeting are not recited.[10] However, it is undisputed from affidavits submitted by the plaintiffs that an ongoing recess of three hours was taken during which some councillors remained in the council chambers, but an undetermined number gathered in back offices. Although the public meeting was scheduled to begin at 11:30 A.M., the plaintiffs' affidavits indicate that the council did not reconvene after the three-hour "recess" until sometime after 5:00 P.M.[11] At some time after 6:45 P.M., the council voted to approve an order providing for an extension of the urban renewal plan submitted by the BRA.

This evidence demonstrates that the judge correctly denied the defendants' motion for summary judgment on the cure issue and also supports the grant of summary judgment to the plaintiffs on that issue. The submissions present no genuine dispute on the facts; the only remaining question is whether the facts as presented could lead a fact finder to determine that there was "independent deliberative action" on December 15 sufficient to effect a cure. See *Pearson* v. *Selectmen of Longmeadow*, 49 Mass.

---

[9] The statements ascribed to Flaherty are contained in the transcript and in councillor Turner's affidavit. While the statements are hearsay to the extent they are offered to prove what actually occurred at the meeting (albeit admissible as an admission of a party-opponent), the motion judge had discretion to consider them where there was neither objection nor motion to strike. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). There has also been no objection to their consideration on appeal.

[10] The plaintiffs complain with some justification, despite their failure to submit any affidavits pursuant to Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), that they are at a distinct disadvantage in proffering evidence about meetings from which they were excluded. We note however that the defendants are assigned the burden to prove compliance with the statute. See G. L. c. 39, § 23B, eleventh par. (at hearing on complaint that the statute was violated, "the burden shall be on the respondent to show by a preponderance of the evidence that the action complained of" was in compliance with the statute).

[11] Rule 6 of the council's rules states that at any time during a meeting the presiding officer may "declare a recess for not more than twenty minutes." (Only the 2005 rules of the council appear in the record. No suggestion has been made that the rules differed in 2004.)

App. Ct. at 125. On this record we conclude that such a determination is not supportable. The only hint of any deliberation is found in the evidence that councillors were permitted, briefly, to ask questions of the BRA and explain their votes on the order. In contrast to the evidence of an extended period of two years during which the BRA issue was scheduled for discussion on multiple occasions,[12] the parties' submissions reveal a maximum of twenty minutes of public discussion on a proposal that had not previously been presented. Accordingly, a fact finder would properly conclude that the public had no opportunity to understand how or why the alternative versions that were rejected led, through deliberation, to the version that was approved. As noted above and in further contrast to the requirement of "independent deliberative action" in order to effect a cure, *Pearson, supra,* Flaherty kept a "tight hold on the time spent in . . . questioning." This scenario fails to meet the legal test for a cure of prior violations of the law.

In addition to granting summary judgment to the plaintiffs on the curative properties the defendants claimed for the December 15 meeting, the judge found that this meeting was, itself, a violation of the statute. On this record, we are unable to conclude that there was either compliance or noncompliance; it is open to a factual determination whether § 23B's requirement of "a notice of every meeting" was satisfied here by a notice of an 11:30 A.M. meeting, when a vote on an unannounced topic was taken at approximately 7:00 P.M., after any member of the public seeking to attend and still present had additionally endured a three-hour "recess" without any indication when it would end, or whether anything might transpire thereafter. Similarly, it remains to be determined whether a violation of the statute's provisions as to executive sessions occurred, both as to notice and

---

[12]For example, the December 15 transcript contains the following statements by BRA director Maloney: "In our conversations with councillors . . . we have been talking about this renewal for the last eighteen or so months . . . . We have both at a hearing here and at the Boston Redevelopment Authority reviewed each of the individual renewal plans . . . ." (In the latter statement, Maloney appears to refer to a hearing held in November, 2004. At oral argument, the defendants expressly waived any reliance on the November hearing as a cure for prior violations.)

as to the limited purposes for which an executive session may be held. See G. L. c. 39, § 23B, excerpted in the margin.[13]

(b) *Did any of the previous meetings violate the open meeting law?* Having determined that the meeting of December 15, 2004, did not effect a cure, the judge went on to consider whether the previous meetings had in fact violated the open meeting law, and granted summary judgment to the plaintiffs on this issue as well. We note that no party moved for summary judgment on this issue; the defendants limited their summary judgment motion to the cure issue with respect to all meetings held prior to December 15, 2004, presumably holding in reserve the argument that nothing transpiring before that date required a cure, while the plaintiffs limited their submissions to opposing the defendants' motion for summary judgment. We agree with the defendants' assertion that the judge's consideration of summary judgment on the propriety of the preceding meetings required an opportunity for the parties to submit affidavits and related materials.

The principles of *Gamache* v. *Mayor of N. Adams,* 17 Mass. App. Ct. 291, 294-296 (1983), are controlling. In *Gamache,* the plaintiff filed a motion for partial summary judgment and, much like the moving party in this case, came to grief. The judge granted full summary judgment for the nonmoving party, thereby reaching additional issues not raised by the moving party, as occurred here. We determined that the parties "should have been given the right to file affidavits on the questions not raised by the plaintiff's motion for partial summary judgment." *Id.* at 296. While the defendants here moved for full, rather than partial, summary judgment, we conclude that the judge

---

[13]General Laws c. 39, § 23B, third par., provides:

"No executive session shall be held until the governmental body has first convened in an open session for which notice has been given, a majority of the members have voted to go into executive session and the vote of each member is recorded on a roll call vote and entered into the minutes, the presiding officer has cited the purpose for an executive session, and the presiding officer has stated before the executive session if the governmental body will reconvene after the executive session."

Section 23B, fourth par., lists nine specific reasons for calling an executive session, and provides that "[e]xecutive sessions may be held only for [those] purposes."

made a similar misstep; it is immaterial that issues remained in this case not because a motion for partial summary judgment was filed as in *Gamache*, but because the defendants' motion for full summary judgment was premised on a theory which, if successful, would have rendered moot the remaining issues. Accordingly, we remand the matter to provide the parties an opportunity, should they desire to pursue summary judgment, to submit affidavits and supporting material in support of their respective positions on whether the meetings in 2003 and 2004 violated the open meeting law.

(c) *Did the meetings of January 13, February 17, and March 24, 2005, violate the open meeting law?* The record shows that all councillors were invited to the meetings of January 13, February 17, and March 24, 2005. The defendants' motion for summary judgment was based on the assertion that the subject matter of these meetings fell outside the council's jurisdiction and therefore outside the statute's ambit.[14] Rejecting this argument (now abandoned by the defendants on appeal), the judge was correct to deny the defendants' motion for summary judgment with respect to these meetings.

We conclude however that the grant of summary judgment to the plaintiffs here suffered from the same defect discussed in part (b), above, in connection with the 2003-2004 meetings, and enunciated in *Gamache* v. *Mayor of N. Adams, supra.* The defendants' motion was silent in other respects on whether

---

[14]The defendants also argued that these meetings were scheduled by the BRA director, rather than the council president, and thus did not come within the definition of "[m]eeting" in § 23A. The motion judge rejected this argument, observing that it was unsupported by legal argument and finding that it "elevate[d] form over substance." We agree. The statute does not expressly limit its applicability to meetings formally initiated by the council president. See, e.g., G. L. c. 39, § 23A (defining "[m]eeting" as "any corporal convening and deliberation of a governmental body . . ."). Nor is "corporal convening" defined in the statute. We decline to read into the statute an exception for meetings not convened by the chair or head of the particular governmental body. Compare G. L. c. 39, § 23B, fifth par. (chance or social meetings may not be used "in circumvention of the spirit or requirements of this section to discuss or act upon a matter . . ."). See generally *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. at 806 n.9, quoting from Cella, Administrative Law and Practice § 1186, at 592 n.16 (1986) ("the general provision[s] of . . . the Open Meetings Law are to be broadly and liberally construed in order to effectuate the legislative purpose of openness").

compliance was actually achieved or whether other factors rendered compliance unnecessary. While the defendants have abandoned the jurisdictional argument on appeal, they allude to other arguments they may seek to advance in the trial court, e.g., that, in their view, while there were "verbal exchanges" and "discussions," there were no "deliberations," no decisions made, and no attempt to reach decisions at these meetings. See G. L. c. 39, § 23A. While we express no view on the merits of these arguments, we conclude that, as in *Gamache*, there was here "an inadequate basis upon which to enter summary judgment" in favor of the plaintiffs. *Gamache*, 17 Mass. App. Ct. at 296.

(d) *The "rotating quorum" argument.* To provide guidance on remand, we address the defendants' assertion at oral argument that a system of rotating participation in the consideration of an issue is a legitimate device to avoid the requirement of G. L. c. 39, § 23B, second par., that "[n]o quorum of a governmental body shall meet in private for the purpose of deciding on or deliberating toward a decision on any matter . . . ." On several occasions[15] the council allegedly posted a guard from the BRA at the door of a private meeting room to maintain a careful headcount and ensure that only a minority of councillors, albeit a rotating minority, were physically in each others' presence at any one moment, despite the fact that the council had been previously ordered to abandon this practice by a judge of the Superior Court. Shannon *vs.* Boston City Council, Suffolk Superior Court, No. 87-5397 (Feb. 28, 1989). Moreover, the council agreed to submit to the continuing jurisdiction of the Superior Court with respect to that order.[16]

Notwithstanding, the defendants argue that the definitions of "meeting" and "deliberation" operate in tandem to permit their actions. As noted above, "[m]eeting" is defined as "any corporal convening and deliberation of a governmental body," G. L. c. 39, § 23A, and "[d]eliberation," in turn, is defined as "a

---

[15]While the evidence is unclear whether or to what extent this device was used at the council sessions with the BRA on or prior to December 15, 2004, affidavits in the record contain hearsay, properly considered in the absence of any objection, asserting such intentional use at meetings with the BRA held in 2005. See *Madsen* v. *Erwin*, 395 Mass. at 721.

[16]We advance no opinion, given the passage of time, whether a complaint for contempt may not lie on this basis.

verbal exchange between a quorum[17] of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction." *Ibid.* From these provisions the defendants argue that a rotating system that permits, de facto, deliberation between seven or more members for the purpose of arriving, in private, at a decision on public business within the council's jurisdiction is legally permissible so long as no more than six members are allowed in the same room at the same time.

We reject this strained interpretation of statutory language, asserted for the sole purpose of defeating the fundamental purpose of the law. "It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached." *Foudy* v. *Amherst-Pelham Regional Sch. Comm.*, 402 Mass. 179, 184 (1988). We reiterate, see note 14, *supra*, that "the general provision[s] of . . . the Open Meetings Law are to be broadly and liberally construed in order to effectuate the legislative purpose of openness." *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. at 806 n.9, quoting from Cella, Administrative Law and Practice § 1186, at 592 n.16 (1986). See *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985), quoting from *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979) (a construction that would defeat legislative purpose will not be adopted "if the statutory language 'is fairly susceptible to a construction that would lead to a logical and sensible result' ").

We note that the Attorney General has also rejected this evasive strategy. See Office of the Attorney General, Open Meeting Law Guidelines, at 26. The Attorney General is charged with enforcement of the open meeting law as it applies to State government bodies, see G. L. c. 30A, § 11A ½, and hence is entitled to interpretive deference. See *Smith* v. *Winter Place LLC*, 447 Mass. 363, 367-368 (2006); *Falmouth* v. *Civil Serv. Commn.*, 447 Mass. 814, 821 (2006).

---

[17]It is undisputed that seven council members constitute a quorum. We also note that on February 5, 2003, councillor Arroyo introduced a proposed order concerning the extension of the BRA's urban renewal plans, which was referred to the council's committee on planning and economic development. It appears from the record that the committee was composed of five members at the time.

2. *Was the Boston University biolaboratory tularemia meeting of January 20, 2005, a violation of the open meeting law?* On January 20, 2005, the council convened a "councillors only" meeting with a representative of Boston University (university) after having been advised by representatives of the Boston University Medical Center that a number of its researchers were exposed in the prior year to tularemia. As was the case in connection with the BRA closed meetings, not all of the councillors were of the view that the public could legally be excluded.[18]

The meeting dealt specifically with public health issues; in particular, according to councillor Hennigan's affidavit, she raised the question whether the tularemia outbreak at the university's medical laboratory might be indicative of the university's inability safely to operate a biolaboratory in a densely populated area.[19,20] The defendants point to the fact that, notwithstanding the invitation to all councillors, their affidavits list only five members of the council who attended this meeting. Relying on *Pearson* v. *Selectmen of Longmeadow*, 49 Mass. App. Ct. at 124, they argue, in effect, that because, as events here transpired, there was no quorum, there was therefore no "deliberation," and hence no "meeting" to which the law applies.

The motion judge concluded that the presence of a quorum is irrelevant if all councillors have been invited to a meeting. We agree. It is undisputed that the council scheduled a meeting for all councillors to consider information to help them decide a matter within their jurisdiction. This required the council to file a notice "with the clerk of the city or town in which the body acts." G. L. c. 39, § 23B, sixth par. As we have observed, the notice requirement contained in the statute is an essential attribute of the law; it is manifestly pointless to conduct a meeting to which the law requires public access if no member of the public is aware that the meeting is taking place. The statute directs that "[e]xcept in an emergency, a notice of every meet-

---

[18]At least one councillor raised the issue whether this closed meeting violated the requirements of the open meeting law.

[19]The university was seeking, and still seeks, to operate a biolaboratory in Boston's South End. See *Allen* v. *Boston Redev. Authy.*, 450 Mass. 242 (2007).

[20]On appeal, the defendants prudently appear to have abandoned their assertion below that this is an area over which the council does not exercise "supervision, control, jurisdiction or advisory power." G. L. c. 39, § 23A.

ing of any governmental body *shall be filed . . . at least forty-eight hours . . . prior to such meeting*" (emphasis added). *Ibid.* This language puts the notice requirement in prospective terms. Moreover, we construe this provision in light of the statute as a whole. Section 23B, fifth par., provides that "[n]o chance meeting or social meeting shall be used in circumvention of the spirit or requirements of this section to discuss or act upon a matter over which the governmental body has supervision, control, jurisdiction or advisory power."

In sum, the council failed to file a notice of a meeting to which all councillors were invited to "gather[] information to aid [them] in arriving at a decision" on a subject — the safety implications of the proposed biolaboratory siting — within the council's jurisdiction. See *Gerstein* v. *Superintendent Search Screening Comm.*, 405 Mass. at 470. The fact that, by chance, less than a quorum of councillors actually attended did not excuse the failure of notice.[21] We note that the Suffolk County District Attorney's office issued a notice to Flaherty on March 21, 2005, stating in plain terms that the January 20, 2005, meeting was in violation of the open meeting law and recommending that "any meeting to which all City Councilors are invited should be posted pursuant to the [statute]."

The record thus demonstrates that the meeting of January 20, 2005, was a violation of the open meeting law. The judge was correct in denying summary judgment to the defendants on this issue. Additionally, the undisputed affidavit of councillor Hennigan described above and proffered by the plaintiffs provides some evidence that a discussion, and thus a "meeting" as defined in § 23A, in which she briefly participated, was intended. Thus, even viewing the facts in a light most favorable to the defendants, they failed to provide any evidence that could satisfy their burden to prove compliance with the statute, and the judge was correct in granting summary judgment to the plaintiffs.

---

[21]Rule 2 of the council's 2005 rules states that "[i]f at any time any meeting is called to order, or if during a meeting, a roll call shows less than a quorum, the presiding officer shall call a recess of not more than ten minutes, after which time, if a quorum is not present, the meeting may be adjourned by the presiding officer." (The 2005 rules were adopted February 2, 2005. No suggestion has been made that the rules in effect on January 20, 2005, were different. See note 11, *supra*.)

*Conclusion.* We affirm the denial of the defendants' motion for summary judgment and the grant of summary judgment to the plaintiffs as to the January 20, 2005, violation, and the failure of the December 15, 2004, meeting to "cure" any earlier violations. We also affirm the denial of the defendants' motion for summary judgment as to the alleged violations of January 13, February 17, and March 24, 2005. In all other respects the judgment and orders entered on March 27, 2006, and November 21, 2006, are vacated and the matter is remanded for further proceedings consistent with this opinion.[22,23]

*So ordered.*

---

[22]The defendants have not challenged the breadth of the injunctive order issued by the judge. For purposes of guidance on remand, we note that the statute authorizes the issuance of an "appropriate order" requiring the defendants to "carry out *such provisions* at future meetings" (emphasis added). G. L. c. 39, § 23B, eleventh par. This refers specifically to those provisions of the open meeting law which are found to have been violated. *Ibid.*

[23]The plaintiffs' request for damages and costs pursuant to Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979), is denied.