SUPERIOR COURT 
 
 KAREN BOUTET, TERRA FRIEDRICHS, AND JEREMY SYMONDS, Plaintiffs vs. ACTON BOARD OF SELECTMEN, Defendant

 
 Docket:
 1981CV01269
 
 
 Dates:
 February 18, 2020
 
 
 Present:
 /s/Karen F. Green Associate Justice, Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 DECISION AND ORDER
 
 

             This is an action to enforce the Open Meeting Law ("OML"), G.L. c. 30A, §l825, and for a declaratory judgment. The plaintiffs, three registered voters who reside in Acton, contend that the defendant, Acton Board of Selectmen ("Board"), failed to comply with the OML in considering whether another Town resident, Daniel Factor ("Factor"), should be appointed as a volunteer member to the Town's Planning Board ("Planning Board").
Background
            The Plaintiffs filed this action on May 13, 2019 and amended their complaint in June of 2019.[1] They essentially allege that the Board intentionally violated the OML when: (1) a quorum of its members had serial communications with each other regarding Factor's candidacy prior to and outside of a scheduled, open meeting on April 22, 2019 ("April 22 Meeting") and (2) its Chair posted an agenda for that meeting listing Factor's candidacy as a consent item knowing that a quorum opposed Factor's appointment and the item would be held for discussion.
            They request: (1) a declaratory judgment that the Board violated the OML by serial communications among its members regarding Factor's candidacy in advance of the April 22 Meeting; (2) an order that the Board shall henceforth comply with the OML by conducting all deliberations under its appointment authority only at open, public meetings; (3) an order reversing the Board's decision not to approve Factor's appointment to the Planning Board; (4) upon finding that any OML violation was
---------------------------
[1]The Amended Complaint is in two counts. Count I alleges violations of §§ 18-25 of the OML and, more particularly, that the OML prohibits "deliberation with a quorum of a public body outside a public meeting, where the communication is done serially with one or more members of that body in turn." Count 11 seeks a declaratory judgment. The Board answered the original complaint on May 30, 2019.
                                                            -1-
intentional, a fine of $1,000 to be paid to the Attorney General; (5) payment by the Board of the plaintiffs' reasonable legal fees and costs; and (6) an order that the Board publish the Court's judgment.
            I held a hearing on May 16, 2019. The Board admitted that it had violated the OML by serial communications regarding Factor's, candidacy among a quorum of its members and (2) placing Factor's proposed appointment on the April 22 Meeting's agenda, knowing it would be held for discussion.[2] It further argued, however, that its violations were unintentional and had been "cured" at a special meeting held on April 30, 2019 ("April 30 Meeting"). Meanwhile, the plaintiffs argued that the Board's violations were intentional and that its attempted "cure" was ineffective.
            With the parties' assent, I held an evidentiary hearing on: (1) whether either violation was intentional and if so, whether one or more members bears responsibility with the Board; (2) whether the April 30 Meeting cured the violations; and (3) an appropriate remedy.[3] Five witnesses testified and 10 exhibits, including DVD recordings of the April 22 and 30, 2019 Meetings, were admitted. On October 11, 2019, each party submitted proposed findings of fact and conclusions of law.[4]
Facts
            Based on the credible evidence presented and the parties' written submissions, I find the following facts.
A. The Board
            The Board is a five-member, elected "public body" as defined in G.L. c. 30A, § 18. As of April 3, 2019, its members were: Joan Gardner ("Gardner") Jon Benson ("Benson"), Peter J. Berry ("Berry"), Dean A. Charter ("Charter"), and David D. Martin ("Martin"). Gardner and Benson commenced their services as Chair and Vice-Chair, respectively, of the Board at or about the same time.
            As chair, Gardner is responsible for creating the Board's agenda, with assistance from the Town Manager's Office. Although she had served as a Board member from 1974 to 1984 and from April of 2016, Gardner chaired her first Board meeting on April 8, 2019.
---------------------------
[2] May 16,2019 hearing transcript, p. 69, lines 2-9. Notwithstanding its admission, the Board argues in its post-hearing brief that its April 22 Meeting notice did not violate the OML. More particularly, it argues that although the OML requires that a public body's meeting notices contain a "listing of topics that the Chair reasonably believes will be discussed at the meeting," G.L.c. 30A, §20(b), it contains no requirement or prohibition relating to the use of a consent agenda.
[3] The hearing was held on June 26 and 28, July 31 and August 14,2019,
[4] Although the court requested that the parties cite to those portions of the evidentiary hearing's transcript that supported their proposed factual findings, the plaintiffs did not do so.
                                                            -2-
            The Town of Acton's Charter vests authority solely in the Board to appoint volunteer members to its Planning Board. A person seeking to serve must apply to fill a vacancy.
            The Town's Volunteer Coordinating Committee ("VCC"), which helps to facilitate appointments to volunteer boards, reviews the application, interviews the applicant, and determines whether to recommend that the Board consider the applicant for appointment. The VCC submits its recommendation to the Board member who serves as the liaison to the Planning Board.
            The liaison then generally reviews the VCC's recommendation, contacts the applicant, and determines whether the applicant should be referred to the Board for its consideration and action. The Board's standard practice has been to place all appointment votes on the consent agenda.[5]
B. Pre-Meeting Communications
            On February 19, 2019, Factor, a lawyer, applied for one of two vacancies on the Planning Board. On March 25, 2019, the VCC interviewed Factor and another candidate, Sam Bajwa ("Bajwa"), at an open public meeting and voted unanimously to recommend that the Board consider appointing both candidates to the Planning Board.
            At the time of Factor's application, Gardner was the Board's liaison to the Planning Board. She first learned that Factor had applied for a Planning Board vacancy from Benson during a town meeting on April 2, 2019. In a conversation that lasted approximately 90 seconds, Gardner and Benson briefly discussed that Factor had applied and agreed that he would not be a good candidate. They did not discuss any other Board member's opinion of Factor's candidacy. Gardner also spoke briefly and separately about Factor's candidacy to Charter, who had not yet been sworn as a Board member, at the same meeting. Charter also indicated that he did not favor Factor's appointment.
            After receiving the VCC's recommendations regarding Factor and Bajwa, Gardner placed Bajwa's appointment on the consent agenda to the Board's April 8, 2019 meeting for a vote. On April 3, 2019, she advised Factor by phone that she was aware of the VCC's vote regarding his application and would get back to him. On April 8, 2019, the Board voted to appoint Bajwa to the Planning Board at an open public meeting through a consent agenda, without any open deliberation.
            At a Planning Board meeting on April 16, 2019, Factor asked Gardner why his appointment had not been considered at the same time as Bajwa's appointment. She
---------------------------
[5] The consent agenda is a procedural mechanism the Board uses to consider and act upon or approve as a group various agenda items efficiently in a single vote. If any Board member wishes to discuss any item included on the consent agenda, the member may request to "hold" that item when the Chair reads the list. The item held is then considered and discussed separately after Board consideration or approval of the remaining consent items as a group. Placing an item on the consent agenda does not guarantee that the Board will vote to approve it and it is not unusual for such an item to be "held" off the consent agenda for further discussion.
                                                            -3-
responded that she did not think Factor had enough support. Factor asked how Gardner knew that and whether she had polled the Board. Gardner said that she had not. Factor asked to meet to discuss the handling of his application more fully, and Gardner agreed to contact him to schedule a meeting.
            On April 17, 2019, Gardner and Benson had a telephone conversation. During the call, which lasted less than five minutes, Benson told Gardner that Charter did not favor Factor's appointment. He also advised Gardner that as liaison to the Planning Board, she had the option of taking no action on the VCC's recommendation that the Board consider Factor's appointment, but that that would not be appropriate given the controversy his application had generated. He suggested that she meet with Factor and tell him that she would not be placing his proposed nomination on the consent agenda. He also indicated that Factor would likely ask for a hearing and so there was a need to discuss the type of hearing to be held. He indicated that Gardner could either place Factor's proposed appointment on the consent agenda and then have a member hold it for further discussion and a Board vote, or schedule it for hearing as a stand-alone, agenda item. Benson felt that Factor was entitled to a hearing and that his proposed nomination should be placed on the consent agenda and then held for discussion.
            On the same day, Gardner notified Factor by phone that she had determined that a majority of the Board's members opposed his appointment and he should consider withdrawing his application. She indicated that he also had the option of having his application placed on the Board's April 22, 2019 agenda, notwithstanding the lack of support. Factor said he wished to appear before the Board, to have members of the public comment, and the Board vote, on his application. Gardner responded, "OK, the matter will be put on the consent agenda and then held" for discussion. Factor asked why a contested matter was being put on the consent agenda and Gardner responded, "all appointments are put on the consent agenda." Factor asked how Gardner was able to determine that a majority opposed his appointment within the bounds of the OML and she said she had spoken with selectmen individually. Factor replied that he continued to have concerns about whether the Board was treating him fairly and would see Gardner at the April 22 Meeting.
            Later on April 18, Gardner called three other Board members, Berry, Charter and Martin. Gardner called Berry to determine whether, if a volunteer's appointment was on a consent agenda, it could be held for discussion. Gardner told Berry, the longest - serving member, that she was placing Factor's application on the consent agenda. She also asked whether the Board had ever not appointed a candidate for a Town board whose candidacy had been placed on the consent agenda. Berry said that it had not happened during his tenure.
            Berry understood that Gardner had reservations about Factor's appointment and that she was asking how she should proceed. He told Gardner that there had been extensive discussions with the VCC to the effect that they were to interview candidates and to highlight any particular concerns about a candidate for the Board, but that the Board finally decides whether to appoint a candidate. He also told Gardner that if she
                                                            -4-
felt, as liaison to the Planning Board, that it was not appropriate to appoint Factor, she should not put his proposed appointment on the agenda at all.[6]
            Gardner did not ask Berry during the call how he planned to vote on Factor's application and he did not tell her. Berry likewise did not ask Gardner, and she did not tell him, how she planned to vote. Nor did they discuss other Board members' opinions regarding Factor's candidacy. In particular, Gardner did not disclose to Berry her knowledge regarding the positions of Benson and Charter, respectively.
            At some point prior to calling Charter, Gardner asked the Board's executive assistant, Lisa Tomyl ("Tomyl"), how the vote on Factor's application should be listed on the Board's agenda.[7] Tomyl said that the standard procedure for handling appointments to boards and committees is to place them on the consent agenda. Gardner commented that if any Board member had any questions about a consent item, he or she could then hold that item for discussion before a vote and directed Tomyl to place Factor's nomination on the consent agenda for the Board's April 22 Meeting.[8]
            In her April 18 call with Charter, Gardner notified him that Factor's nomination would be on the consent agenda. She explained that she had spoken to Factor by phone and he had refused to withdraw his application. Charter said that he would hold Factor's nomination from the consent agenda for further discussion.
            In her April 18 call with Martin, Gardner described the process by which the Board would make a decision on Factor's candidacy. More particularly, she told him that Factor's candidacy was likely to be held from the consent agenda and discussed.
            Gardner did not discuss Factor's qualifications in her April 18 calls with Charter and Martin. She did not ask, and neither gentleman said, how he planned to vote, and she did not tell either how she or any other Board member viewed Factor's candidacy.
            On Easter Sunday evening, April 21, 2019, Benson called Gardner to advise her that the Board had received several emails in favor of Factor's appointment, which he would acknowledge, and to check in with her on the process by which the Board would make a decision on Factor's candidacy. She confirmed that Factor's appointment would be held. Benson also mentioned that Charter did not favor Factor's appointment.
---------------------------
[6] Neither Benson, who is a retired divorce and family lawyer, nor Berry, who is a municipal lawyer, ever raised any OML issue with Gardner during her pre-meeting communications with them. During his April 18 conversation with Gardner, Berry was not aware that the OML might be relevant to whether Factor's candidacy should be placed on the Board's consent agenda and as of the hearing, he did not believe that it necessarily was. Berry understands that the OML requires that an agenda contain all items that the Board reasonably anticipates will be discussed during an open meeting. When the consent item relating to Factor's proposed appointment was held for discussion during the April 22 Meeting, Berry did not believe that the Board had violated the OML.
[7]As of April 22, 2019, Gardner had chaired only one other Board meeting.
[8]Items are placed on the Board's consent agenda only for administrative convenience and such placement does not guarantee that an item will be approved.
                                                            -5-
            At the time of the serial, pre-meeting communications referenced above, Gardner did not think they violated the OML. She mistakenly understood that the OML only prohibited communication among a quorum simultaneously, that is three or more members at one time. She understood that it was permissible to have a one-on-one communication with another Board member about a nominee's candidacy, but not such a communication among a quorum of Board members.
            Gardner did not intend, by those communications, to pre-determine the Board's vote. She now understands that serial communications regarding an applicant's candidacy by one Board member with other individual Board members violates the OML.
            Gardner also did not intend to mislead the public by placing Factor's proposed appointment on the consent agenda. Her purpose was to follow the Board's standard procedure for considering appointments, not to mislead the public as to the likelihood that the Board would approve Factor's appointment.
            Benson also had certain communications with other Board members concerning Factor's candidacy prior to the April 22 Meeting. During his campaign for election as a selectman, Charter had publicly stated that he would not support Factor's appointment to the Planning Board. He confirmed this position in a conversation with Benson at an election night party on March 26, 2019. Charter said he was opposed to Factor's appointment and Benson responded, "so am I."
            On his way to the restroom shortly before the April 22 Meeting, Benson told Charter "[i]t would appear that the vote is 4-to-1," with respect to Factor's appointment. Charter did not respond.
            Benson testified that at the time of his pre-meeting communications with Gardner, he did not believe he was violating the OML because they were either one-on-one communications or "about process." He did not believe that either of his communications with Charter violated the OML because as of March 26, Charter had not yet been sworn in as a selectman and he thought he was merely giving an opinion on the likely outcome of the Board vote on April 22. As of that time, he knew that he, Charter and Gardner did not favor Factor's appointment. He did not know how Martin or Berry would vote, but he had a "hunch" that Berry would probably also vote against Factor's appointment. While he conceded that his latter comment was "ill-advised," he denied any intent to violate the OML at the time he made it. He further testified that he now understands that taken as a whole, his communications with Gardner on April 17 and 21 and comment to Charter on April 22 violated the OML.[9]
---------------------------
[9] Benson also corresponded by email on April 2 and 18, 2019, with Janet Adachi, a former Board member whose term expired on April 2, and Nancy Tavernier regarding Factor's candidacy. On April 2, 2019, Tavernier wrote, "I hear that Danny was recommended by the VCC for the PB. This cannot happen." After Adachi responded, Benson wrote, "That would not be good. I'm having lunch with Joan tomorrow." On April 18th, Adachi asked, "What do you expect to happen re proposed PB appointment of DF?" Benson responded that "Chairwoman [Gardner] has four firm votes against [Factor's] appointment on Monday night." Adachi asked, "Excluding or including her?" Benson replied, "Including Joan. Don't know DM's vote. I steeled Joan and she really stepped up." These communications did not violate the OML because neither Tavernier nor Adachi was a Board member voting on Factor's appointment. Benson testified that his April 18th email, like his comment to Charter immediately before the April 22 Meeting, represented only his best guess as to the outcome of the Board's vote.
                                                            -6-
C. April 22 Meeting
            Discussion of Factor's proposed appointment at the Board's April 22 Meeting lasted nearly thirty minutes. Gardner included Factor's proposed appointment as Consent Item 14 on the Board's agenda.[10] Benson moved to "hold" the item for further discussion. Gardner stated that as liaison to the Planning Board, she did not recommend Factor's appointment. Thereafter, each of Benson and Charter individually stated his view that Factor should not be appointed and the reasons for his view. Martin indicated that he had questions for Factor, who stated that he would be happy to answer them, but only after he first delivered a statement, which he did. Thereafter, Martin asked, and Factor answered, his questions. Martin said he favored Factor's appointment.
            Berry asked Gardner to state the reasons she did not favor Factor's appointment. She did so and Berry then asked Factor some further questions. After Factor answered his questions, Berry stated his considerations.
            The Board acknowledged its receipt of letters prior to the meeting supporting and opposing Factor's candidacy. Gardner did not permit members of the public who sought to address Factor's candidacy to do so, stating the matter was a consent agenda item.[11] Factor objected. Gardner moved that Factor not be appointed and the Board voted, 4-1, in favor of her motion. Only Martin voted in favor of Factor's appointment.
            A resident attending the meeting questioned the appropriateness of foreclosing public comments and questions. Factor asked about the criteria under which his candidacy had been placed on the consent agenda, after Gardner had told him that she had "polled" the Board prior to the meeting and determined that his candidacy did not have support. Gardner did not answer his question and the meeting was adjourned.
            That same evening, the Town, through its Manager, John Mangiaratti ("Mangiaratti"), sent an email to Factor expressing concern about the process that had led to the Board's decision and requested an opportunity to confer with him. The next morning, on April 23, 2019, Mangiaratti and Town Counsel, Nina Pickering-Cook ("Pickering-Cook"), met with Factor and his counsel to discuss his allegations. In that meeting, Town counsel proposed that the Board hold another specially-scheduled, open
---------------------------
[10] Item 14 was listed on the agenda as "Committee Appointment, Danny Factor, Full Member, Planning Board (term to expire 6/30/2024)."
[11]Factor does not contend that the OML required public comment on his candidacy. However, he testified that Gardner had told him on April 17 that the agenda item relating to his proposed appointment would be held and he expected that there would be public comment on it because in his experience, that was "standard procedure" for the Town of Acton.
                                                            -7-
meeting as soon as possible so the Board could re-deliberate and re-vote on Factor's candidacy. The meeting was scheduled for April 30, 2019, eight days later. Gardner understood its purpose was to cure OML violations.[12]
            The April 30 Meeting lasted approximately one and one-half hours. Factor's proposed appointment was the only item on the agenda and it was not listed as a consent item.
            Gardner opened the meeting by publicly apologizing to Factor for foreclosing public comment at the April 22 Meeting and violating the OML. Noting that the process followed "did not meet the standards to which [the] Board should be held," she admitted that she had spoken "to a quorum of the Board concerning the substance of their votes on the topic of Factor's candidacy" prior to the April 22 Meeting and had thereby "unknowingly" violated the OML. Pickering-Cook then reported on the Town's initial investigation of out-of-meeting communications regarding Factor's candidacy prior to the April 22 Meeting, which she then described.
            Gardner specifically stated that: the April 30 Meeting was being held to reconsider Factor's candidacy for the Planning Board; it would be conducted as if the April 22 Meeting had never occurred; and participants should re-state any comments made at the April 22 Meeting that they wished to have considered prior to the Board's re-vote. Upon her invitation, Factor delivered approximately 14 minutes of remarks regarding his background, qualifications and interest in the proposed appointment, after which he answered questions from Board members for more than 35 minutes. Discussion included the voicing of concerns by Board members regarding Factor's fitness for Planning Board membership based on his past actions as a member of the Town's Commission on Disabilities, and his public positions on major planning initiatives in the Town and the Board's work.
            Gardner opened the floor to public comment, which lasted approximately 25 minutes. Eight persons, including all three of the named plaintiffs, expressed support for Factor's appointment. Two also commended the Board for deciding to reconsider Factor's candidacy. 
            Thereafter, each Board member stated his or her views on Factor's candidacy. Martin moved for Factor's appointment and the Board voted 3-2 against appointment, with Berry and Martin voting in favor.
            Gardner and other Board members attended a training by Town counsel on the OML in December of 2018 that included a slide presentation concerning deliberations of a quorm outside of a public meeting, However, she does not specifically recall any discussion during that presentation of serial communications among a quorum constituting a violation of the OML. Benson attended the same training, but did not
---------------------------
[12] The parties agreed that this "re-do meeting" would be without prejudice to any further action by Factor or members of the public. The Town consulted with Factor and plaintiffs' counsel in establishing the special meeting's agenda.
                                                            -8-
understand that his communications with other individual Board members prior to the April 22 Meeting constituted OML violations.
            Berry has known Factor for many years and considers him a friend. He has served as a Board member, from 2007 to 2010 and from 2013 to the present. He could not recall any instance prior to April 22, 2019 in which the Attorney General's Office or any court had found the Board to have violated the OML by engaging in serial communications outside of a properly-noticed meeting or by inappropriately using the consent agenda.
            Factor remains interested in an appointment to the Planning Board.
Discussion
1. The Board violated the OML.
            The OML is designed "to eliminate much of the secrecy surrounding deliberations and decisions on which public policy is based." City of Revere v. Mass. Gaming Comm 'n, 476 Mass. 591, 610 (2017), quoting Ghiglione v. School Comm. of Southbridge, 376 Mass. 70, 72 (1978). The statute: "provides a framework under which all meetings of a public body shall be open to the public unless a statutory exception applies," City of Revere v. Mass. Gaming Comm 'n, 2019 WL 4017027 at 3 (Suffolk Super. Ct. July 12, 2019) (quotations omitted); establishes requirements for the content and posting of meeting notices and meeting minutes, G.L. c. 30A, §§ 18 et seq.; and prohibits a "quorum" of a public body from engaging in "deliberation" "with respect to any matter within the body's jurisdiction," unless a specific exception applies. Id., § 18.[13]
            The OML generally defines "deliberation" to include "an oral or written communication through any medium, including electronic mail." Id Communications among less than a quorum [14] of a public body's members violate the OML if, taken together, they constitute communications among a quorum. [15] District Atty for the No. District v. School Comm. of Wayland, 455 Mass. 561, 570-571 (2009) (although some email communications were between individual school committee members and, therefore, were not strictly "deliberations," OML violation found because they had effect of circumventing OML's requirements); McCrea v. Flaherty, 71 Mass. App. Ct. 637, 651 (2008) (private serial communications violate spirit of OML and may not be used to circumvent law's intent).
            The Board has admitted that it violated the OMLwhen: (1) its members engaged in serial communications, which constituted deliberations among a quorum, concerning Factor's candidacy prior to the April 22, 2019 Meeting and (2) Gardner placed Factor's
---------------------------
[13] The .OML, in pertinent part, defines a "meeting" as "a deliberation by a public body with respect to any matter within the body's jurisdiction. G.L. c. 30A, § 18.
[14] The OML defines "quorum" to mean "a simple majority of the members of the public body, unless otherwise provided in a general or special law, executive order or other authorizing provision." Id.
[15] Such violations are also known as "serial communications."
                                                            -9-
nomination on the April 22 Meeting's agenda as a consent item, knowing in advance that it would be held for discussion.
2. The Board's violations were not intentional.
            Section 23(f) of the OML assigns the burden of proving compliance with the statute on the Board. In relevant part, it provides that in any hearing under that section, "the burden shall be on the respondent, to show by a preponderance of the evidence that the action complained of in the complaint was in accordance with and authorized by the [OML]." Id.
            An "intentional violation" is "[a]n act or omission by a public body or member thereof, in knowing violation of [the OML]." G.L. c. 30A, §18. "Evidence of an intentional violation...shall include, but not be limited to, the public body or body member that: (a) acted with specific intent to violate the law; (b) acted with deliberate ignorance of the law's requirements; or (c) was previously informed by receipt of a decision from a court of competent jurisdiction or advised by the Attorney General... that the conduct violates [the OML]." 940 Code Mass. Regs. § 29.02. However, "[w]here a public body or public body member has made a good faith attempt at compliance with the law, but was reasonably mistaken about its requirements, such conduct will not be considered an intentional violation." Id. Further, the serious nature of any violation does not mean that it is per se intentional. See Office of the Attorney General, Opinion No. 2011-34,2011 WL 13062010 (Mass.A.G.) at *1, 15 (Aug. 4, 2011).
            Section 23(f) of the OML does not specifically state who bears the burden of proving that any violation of the OML was intentional. The Board argued, in a pre-hearing brief, that the plaintiffs do.[16] Meanwhile, the plaintiffs contend that the Board does. Assuming, without deciding, that the Board bears the burden of proving by a preponderance of the evidence that its failure to comply with the OML was unintentional, I find that the Board has met it.
            Each of the Board members called independently testified that he or she did not know that his or her one-on-one communication with another member prior to the April 22 Meeting constituted an OML violation. Gardner, who participated in the serial communications, mistakenly understood that the OML" only prohibited communication among a quorum simultaneously, and that it was permissible to have a one-on-one communication with another Board member about Factor's candidacy. No evidence suggested that any of the members' ignorance of the law in this regard was deliberate.
            Gardner, who had chaired only one prior Board meeting„ also credibly testified that, after consulting with Tomyl, she understood that the Board's standard procedure was to place all proposed appointments on the consent agenda and that her only purpose
---------------------------
[16] The Board argued that the plaintiffs should bear the burden because the statute is silent on the issue and there exists "a legal presumption that public officials act appropriately," citing Commonwealth v. Lanotte, 409 Mass. 1, 5 (1990) and Planning Bd. of Springfield v. Board of Appeals of Springfield 338 Mass. 160, 163 (1958).
                                                            -10-
in placing Factor's candidacy on the consent agenda was to comply with that standard procedure.
            Although Factor testified that he referenced the OML in his April 17 conversation with Gardner, I nevertheless conclude that Gardner acted mistakenly and without any intent to deceive. It is undisputed that Gardner subsequently consulted with Tomyl about how Factor's candidacy should appear on the agenda. Further, Gardner told Factor, in the same April 17 conversation, that his proposed appointment would be placed on the consent agenda and held. If Gardner had intended to conceal from anyone that the item would be held for discussion, she presumably would not have shared this information with Factor.
            Once the Board became aware of Factor's allegation that it had violated the OML on April 22, it took immediate corrective action. It solicited the advice of Town counsel and reached out to Factor and his counsel. In consultation with them, it then: publicly admitted and apologized for its violative conduct; voluntarily disclosed the out-of-meeting communications among its members; and openly re-deliberated at the April 30 Meeting on whether Factor should be appointed.
            Finally, the parties did not present any evidence that the Board or any of its members was previously informed by receipt of a decision from a court of competent jurisdiction, or advised by the Attorney General, that serial communications by a quoium of its members or the placement of a proposed appointment on a consent agenda, knowing that it would be held for discussion, violates the OML.
3. The Board cured its violations.
            Violations of the OML may be cured by "independent deliberative action" that takes place at a subsequent, properly-noticed public meeting. Allen v. Bd. of Selectmen of Belmont, 58 Mass. App. Ct. 715, 718 (2003), quoting from Pearson v. Board of Selectmen of Longmeadow, 49 Mass. App. Ct. 119, 125 (2000). See also Benevolent & Protective Order of Elks, Lodge No. 65 v. City Council of Lawrence, 403 Mass. 563, 566 (1988); City of Revere v. Massachusetts Gaming Comm 'n, 2019 WL 4017027 at *3; Hetzler v. Greater Fall River Vocational Sch. Dist. Sch. Comm., 2013 WL 1845863, at *4,6 (Mass. Super. Ct. March 4, 2013). "Where the subsequent meeting 'is merely a ceremonial acceptance' or a 'perfunctory ratification of secret decision,' it plainly does not help accomplish the purpose of the open meeting law, and will not operate as a cure." McCrea v. Flaherty, 71 Mass. App. Ct. 637, 642 (2008), quoting from Pearson, 49 Mass. App. Ct. at 125.[17]
---------------------------
[17] This case is distinguishable on its facts from McCrea. In McCrea, the Appeals Court decided that a meeting held by the Boston City Council at which it voted in favor of extending an urban renewal plan submitted by the BRA did not involve independent deliberative action and, thus, did not cure numerous alleged violations of the OML by the Council in conducting prior meetings on the matter without public notice or public access. Among other things, the Court relied on evidence that the meeting at which the vote was taken involved a maximum of 20 minutes of public discussion on a proposal that had not previously been presented, and involved an ongoing recess of three hours, during which an undetermined number of councilors gathered in back offices. 71 Mass. App. Ct. at 642-644.
                                                            -11-
            I find that the Board's OML violations were cured by the April 30 Meeting. The Board, in good faith, conducted an immediate investigation, properly noticed the April 30 Meeting, and took independent, deliberative action on Factor's proposed appointment at that meeting. The Board's 3-2 vote against appointment, after such deliberation and prior to this lawsuit, was neither a "ceremonial acceptance" nor a "perfunctory ratification" of any "secret decision" or of the April 22 Meeting's 4-1 vote. Rather, it was the Board's good faith attempt to correct unintentional violations that it had already publicly
admitted.
CONCLUSION AND ORDER
            For the reasons stated above, this Court hereby adjudges and declares that the Board violated the OML by deliberating on Factor's candidacy for appointment to the Planning Board in advance of the April 22 Meeting. The Board is ORDERED to comply with the OML by conducting all future deliberations under its appointment authority only at open, public meetings.
            The plaintiffs' requests that I reverse the Board's April 30, 2019 decision and that I order the Board to appoint Factor to the Planning Board, publish this decision, and pay the plaintiffs' legal fees and costs are denied. Although the OML authorizes a court to "nullify" action taken at a public hearing, it does not authorize this Court to order the Board to appoint Factor to the Planning Board. [18] Because the Court will publish this decision, there is no need to order the Board to do so. Finally, in suits under the OML, a court "should not depart from [the] general rule that each party bears its own legal costs." Allen, 58 Mass. App. Ct. at 721. See Pearson v. Board of Health of Chicopee, 402 Mass. 797, 801 n.4 (1988) (Legislature did not intend for recovery of legal fees in enforcing the OML).
@/s/Karen F. Green Associate Justice, Superior Court
@February 18, 2020
---------------------------
[18] Upon the finding of a violation of the OML, this Court may enter "an order to:
(1) compel immediate and future compliance with the [OML];
(2) compel attendance at a training session authorized by the attorney general;
(3) nullify in whole or in part any action taken at the meeting;
(4) impose a civil penalty upon the public body of not more than $1,000 for each intentional violation;
(5) reinstate an employeeiwithout loss of compensation, seniority, tenure or other benefits;
(6) compel that minutes, records or other materials be made public; or
(7) prescribe other appropriate action." G.L. c. 30A, §23(c) and (f).
                                                           -12-