Lu, John T., J.
This case involves a long-running dispute concerning the proposed development of an asphalt manufacturing facility on industrial property at 540 Groton Road located near the northeast corner of Westford, Massachusetts (the “Project”). Plaintiffs, four registered voters (the “Voters”) in the town of Westford, filed this action pursuant to G.L.c. 30A, §23(f)[3] alleging that the Municipal Defendants, the Town of Westford (the “Town”), members of the Board of Selectmen of the Town of Westford (the “Board”), members of the Planning Board of the Town of Westford (the “Planning Board,” and together with the Board “Town Boards”) (collectively, the “Municipal Defendants”), along with Newport Materials, LLC (“Newport”), and 540 Groton Rd., LLC (“Groton”), violated the Open Meeting Law, G.L.c. 30A, §§18-25. The Voters now move for a preliminary injunction. The Voters’ Motion for a Preliminary Injunction is DENIED.
PROCEDURAL HISTORY
At all relevant times, 540 Groton Road (the “Site”) was owned by Groton and leased by Newport. On April 9, 2009, Newport applied to the Planning Board for Site Plan Review for the Project, as well as a Special Permit for storage of #2 fuel in the Water Resource Protection Overlay District (“WRPOD”), and a Special Permit for a Major Construction Permit (“MCP”).[4] Between May 4, 2009, and April 20, 2010, the Planning Board held twenty-one public hearings with respect to the Project. On April 20, 2010, the Planning Board voted 4-1 to deny all three applications. The Planning Board issued three separate decisions, the Site Plan Review Decision, the WRPOD Decision, and the MCP Decision. The Planning Board’s decisions to deny these applications were based primarily on its “finding that the [Project] [was] not light manufacturing as defined in the [Town of Westford Bylaws] and the application therefore ha[d] no standing” (the “Planning Board Decisions”).[5]
On May 18, 2010, Newport and Groton filed an action in Land Court pursuant to G.L.c. 40A, §17, appealing the Planning Board Decisions (“Case l”),[6], [7] Following a trial, the Land Court (Sands, J.) instructed Newport and Groton to resubmit to the Planning Board modified applications consistent with its written opinion issued on December 8, 2014, and remanded the case to the Planning Board for further proceedings.[8]
Newport filed modified Project applications with the Planning Board. While it was successful in obtaining certain permits, the modified MCP Special Permit application, as well as an application filed with the Town of Westford Zoning Board of Appeals (the “Zoning Board”) for a variance, were denied. Thereafter, Newport and Groton filed two separate actions in Land Court (“Case 2” and “Case 3”) challenging the Planning *11 Board’s denial of the MCP Special Permit application and the Zoning Board’s denial of the variance.
Although the Zoning Board denied Newport’s application for a variance, Newport applied for and obtained from the Zoning Board a variance from the term “quiet” as applied to the Site’s western boundary. Various abutters then filed an action on June 4, 2015, challenging the Zoning Board’s decision to grant that variance (“Case 4”).
In relation to Cases 2 and 3, the Board met in executive session to discuss litigation issues on a number of occasions. Following the receipt of several “adverse” pre-trial orders, the Town Boards, believing their likelihood of success at trial to be “less than ideal,” decided it would be beneficial to participate in settlement negotiations. The Town Boards later agreed to participate in these negotiations through mediation, each designating one member to attend, but reserving for itself the authority to vote to approve or deny any final settlement agreement.
On June 20, 2016, one member of the Board, along with members of the Town Counsel, the Town’s Director of Land Use Management, and counsel for the Town attended settlement negotiations mediated by the Honorable Leon Lombardi (Land Court, ret.).[9] Thereafter, the Planning Board met in executive session on June 24, 2016, July 18, 2016, September 6, 2016, September 19, 2016, and September 27, 2016, to discuss the terms proposed during mediation. Likewise, the Board met in executive session on June 28, 2016, August 23, 2016, and September 27, 2016 for the same purpose. The public notice for each session listed the time, date and location of each meeting, and provided further that the Town Boards would be entering into executive session to “(r)ecieve an update on litigation for Newport Materials, LLC et al. v. Westford Zoning Board of Appeals et al. and v. Planning Board of Westford et al., as an open session may have a detrimental effect on the litigating position of the public body.”[10] Before each executive session, the Planning Board convened in open session, repeated the information contained in the notice as to why it was entering executive session (to discuss litigation strategy relative to the Newport matter), after which it voted to enter executive session.
On or around September 27, 2016, the Town Boards met and voted to approve a number of terms which contemplated the issuance of the MCP Special Permit, subject to a number of operating limitations and conditions.[11] On October 3, 2016, the Case 4 Abutters filed a motion to intervene. The next day, the Town issued a public statement relating to the settlement.
On October 5, 2016, the parties jointly filed a request for approval of a proposed Agreement of Judgment (“Agreement of Judgment”). On October 6, 2016, the Case 4 Abutters filed an objection to the Agreement of Judgment, citing Open Meeting Law violations. The Land Court (Sands, J.) held status conferences on October 13, 2016, and October 19, 2016, to address several potential issues identified by the Land Count. A primary issue noted was the need to preserve for anyone who objected to the issuance of the MCP Special Permit, the opportunity to appeal.
The Town Boards published notice of a public meeting scheduled to take place on October 12, 2016, to discuss the terms of the Agreement of Judgment. Due to the significant public attendance, however, the Deputy Fire Chief determined the meeting room was over capacity and the public meeting was rescheduled for October 25, 2016.[12]
On October 24, 2016, the Land Court issued an Order (the “Order”) allowing the Agreement for Judgment to enter, subject to a number of conditions. On November 3, 2016, the Municipal Defendants filed a motion to vacate the Agreement for Judgment pursuant to Mass.RCiv.P. 60(b)(6), in relation to two paragraphs stricken from the Order: Paragraphs 3 and 4.[13] By order dated November 9, 2016, the Land Court issued a Revised Order (the “Revised Order”), to reflect the Agreement of Judgment originally filed by the parties, denying the motion to vacate as moot, and ordering the MCP Special Permit to issue by November 14, 2016.
To comply with the Revised Order, the Municipal Defendants issued the MCP Special Permit on November 14, 2016. That same day, however, the Voters sought and obtained from the court (Kern, J.), a Temporary Restraining Order (“TRO”) enjoining the Municipal Defendants from issuing the MCP Special Permit. The MCP Special Permit was issued prior to the Municipal Defendants’ receipt of the TRO.
The final Settlement Agreement is 29 pages long and mandates the issuance of the MCP Special Permit in exchange for Newport’s compliance with approximately 100 operational conditions and limitations, including, but not limited to, prohibiting any new uses of the Site, limiting traffic to less than what is currently authorized at the Site, and a variety of noise, odor, and operating hour restrictions.
DISCUSSION
I. Preliminaiy Injunction
“A preliminaiy injunction is an extraordinary remedy never awarded as of right.” Winter v. Natural Res. Def. Council Inc., 555 U.S. 7, 24 (2008). To the contrary, “the significant remedy of a preliminaiy injunction should not be granted unless the plaintiffs had made a clear showing of entitlement thereto.” Student No. 9 v. Board of Educ., 440 Mass. 752, 762 (2004). As the party seeking injunctive relief, the Voters bear the burden of demonstrating a likelihood of success on the merits, and that irreparable harm — i.e., harm of a peculiar nature not capable of redress after final judgment — will result from denial of the injunction. Tri-Nel Mgt. v. Board of Health, 433 Mass. 217, 219 (2001), *12 citing Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If the Voters prove that they are likely to succeed on the merits of their claims, this Court must balance the irreparable harm the Voters face “against any similar risk of irreparable harm which granting the injunction would create for the opposing parities].” Packaging Indus. Group, Inc., 380 Mass. at 617. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id. Because the Voters “seek [ ] to enjoin governmental action, the court also considers whether the relief sought will adversely affect the public interest.” Tri-Nel Mgt., 433 Mass. at 219. Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
A. Analysis
The open meeting law was enacted “to eliminate much of the secrecy surrounding deliberations and decisions on which public policy is based.” Ghiglione v. School Committee of Southbridge, 376 Mass. 70, 72 (1978). See Board of Selectmen of Marion v. Labor Relations Comm., 7 Mass.App.Ct. 360, 361 (1979), citing Attorney General v. School Comm. of Taunton, 7 Mass.App.Ct. 226 (1978). The law requires that all meetings of a public body shall be properly noticed and open to the public. G.L.c. 30A, §20(a), (b). However, “]t]he Legislature has recognized that not everything done by public officials and employees can or should occur in a public meeting.” McCrea v. Flaherty, 71 Mass.App.Ct. 637, 640 (2008). To that end, the law enumerates ten exceptions under which closed, executive sessions maybe conducted. G.L.c. 30A, §21(a), (b). Relevant to this case are §§21 (a) (9), and (a)(3). Section 21(a)(9), allows a public body to meet in executive session: “To meet or confer with a mediator, as defined in section 230 of chapter 233, with respect to any litigation or decision on any public business within its jurisdiction involving another party, group or entity, provided that: (i) any decision to participate in mediation shall be made in an open session and the parties, issues involved and purpose of the mediation shall be disclosed; and (ii) no action shall be taken by any public body with respect to those issues which are the subject of the mediation without deliberation and approval for such action at an open session].]” Section 21(a)(3), allows a public body to meet in executive session: “]t]o discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the public body and the chair so declares].]”
At the outset, the parties dispute whether §21(a) (9) or §21(a) (3) applies to the instant action. The Voters argue that §21(a) (9) applies to a situation where, as here, a single member of the Board attends mediation. This Court disagrees.
In determining whether §21(a) (9) applies in the instant action, this Court is guided by the tenet that statutory language “is to be construed as written, in keeping with its plain meaning.” Stop & Shop Supermarket Co. v. Urstadt Biddle Props., Inc., 433 Mass. 285, 289 (2001). See Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977) (statutory text is the “principal source of insight into the legislative purpose”). The term “meeting” is defined as “a deliberation by a public body with respect to any matter within the body’s jurisdiction.” G.L.c. 30A, §18. A “deliberation” is defined, in relevant part, as “an oral or written communication through any medium, including electronic mail, between or among a quorum of a public body on any public business within its jurisdiction.” Id. A “quorum” is defined as “a simple majority of the members of the public body, unless otherwise provided in a general or special law, executive order or other authorizing provision.” Id.
Here, a plain reading of the statute, along with the definitions provided by the Legislature, compel this Court to conclude that §21(a) (9) does not apply to a case where, as here, a single member of the Board, who is without authority to make any decisions on the Board’s behalf, attends mediation. Rather, §21(a)(9) applies to situations in which a quorum of the Board seeks to participate in mediation. This conclusion is buttressed by the Appeals Court’s holding in Pearson v. Board of Selectmen of Longmeadow, 49 Mass.App.Ct. 119 (2000). There, the Appeals Court concluded that the open meeting law did not apply to a nonpublic meeting attended by the chairman of the Board of Selectmen of Longmeadow, the executive secretary of that board, the mayor of Springfield, two other Springfield officials, and two local residents relative to reopening a street. Id. at 122. The Appeals Court explained that neither prior case law “nor the statute provides support for the proposition that a single member of a governmental body who attends a meeting with others who are not members of the same governmental body — indeed, with officials of another municipality — is a ‘subcommittee’ within the meaning of the open meeting law.” Id. at 124.
Because this Court concludes that §21(a) (9) does not apply, this Court addresses the Voters’ likelihood of success in proving that the Board violated §21 (a) (3). Relative to that section, the Voters contend that the Board failed to provide sufficient detail regarding the nature of its discussion regarding the Newport litigation before entering into executive session in violation of the Open Meeting Law. They complain that the notice failed to alert the public that the Board was considering entering into mediated settlement negotiations. This argument is equally unavailing.[14]
A public body must post notice of every meeting, and must include the date, time and place of the meeting, as well as “a listing of topics that the chair reasonably anticipates will be discussed at the meeting.” G.L.c. 30A, §20(b); 940 Code Mass.Regs 29.03(l)(b). The list of topics shall have sufficient specificily to reasonably advise the public of the issues *13 to be discussed at the meeting. Id. In general, this level of detail applies equally to open session and executive session topics listed on a meeting notice. See OML 2011-56; OML 2011-15.
Here, the meeting notices clearly indicated the time, date and location of the meetings, and that the Board anticipated entering into executive session to discuss litigation strategy relevant to the Newport matter. Nothing more is required by the applicable statutory provisions. Put another way, the Open Meeting Law simply does not require the level of detail urged by the Voters. See OML 2016-152; OML 2016-21; OML 2015-45.
While this Court is cognizant of the fact that “the general provision[s] of. . . the Open Meetings Law are to be broadly and liberally construed in order to effectuate the legislative purpose of openness,” General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 806 n.9 (1999), this Court concludes that the Voters have not established a likelihood of success on the merits of their claims sufficient to warrant injunctive relief.
Even if the Voters had demonstrated a likelihood of success on their claims, they have not demonstrated that they will suffer irreparable harm in the absence of a preliminary injunction. Irreparable harm exists where “money damages would not adequately redress any harm the [Voters] might suffer prior to a final judgment should they prevail on the merits ...” Packaging Indus. Group, Inc., 380 Mass. at 621. See also Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643 (1987) (“Economic loss alone [ ] does not usually rise to the level of irreparable harm which a party must establish to obtain a preliminary injunction”). Here, the sole harm claimed by the Voters is litigation costs associated with filing an action under G.L.c. 40A, §17. Because the alleged harm could be remedied purely by monetary compensation, they are not entitled to injunctive relief.[15] This Court’s denial of the injunctive relief the Voters seek would not have an adverse impact on the public interest because the Settlement Agreement can be challenged through an action filed pursuant to G.L.c. 40A.
ORDER
For the foregoing reasons, it is ORDERED that the Voters’ Motion for a Preliminary Injunction is DENIED. Consistent with this Order: (1) the TRO entered on November 14, 2016 is hereby vacated effective November 29, 2016; and (2) the Voters’ request that the Board release the minutes of executive sessions relevant to the Newport settlement is DENIED pursuant to G.L.c. 30A, §22(f) until that matter is closed.

 Section 23(f) of Chapter 30A provides, in relevant part: “3 or more registered voters may initiate a civil action to enforce the open meeting law.”

 Around this time, Newport also applied for a plan approval from the Massachusetts Department of Environment Protection (the “MassDEP”), which was conditionally granted in September of 2009; a final modified conditional approval issued on April 7, 2011.

 Section 10.2 of the Town of Westford Bylaws (“Bylaw”) defines “Light Manufacturing" use as follows: “fabrication, assembly, processing or packaging operations employing only electric or other substantially noiseless and inoffensive motor power, utilizing hand labor or quiet machinery and process, but subject, however, to the following conditions: any light manufacturing business, the conduct of which may be detrimental to the health, safety or welfare of persons working in or living near the proposed location of such manufacturing, including, without limiting the generality of the foregoing, special danger of fire or explosion, pollution of waterways, corrosive or toxic fumes, gas, smoke, soot, dust or foul odors and offensive noise and vibrations, is expressly prohibited.”

 Newport and Groton further sought a judicial determination, pursuant to G.L.c. 240, §14A, with respect to certain provisions of the Bylaw relative to the definitions of “Light Manufacturing” uses and MCPs. They also sought a declaratory judgment, pursuant to G.L.c. 231A, as to whether the Project constituted a “Light Manufacturing” use and/or an MCP.

 Newport and Groton filed their First Amended Complaint on June 16, 2010, whereby they amended Counts IV and V.

 The Land Court stated that Newport’s submissions should “(a) incorporare] the sound attenuation barriers recommended by [Newport’s sound expert Cavanaugh Tocci Associates, Inc.] CTA, (b) provid[e] that the Project will employ five or more employees, (c) request [ ] a variance to operate more than one principal use on the [Site], and (d) address [ ] the issue of the Project’s power sources. Such a revised application must be also accompanied by revised applications for MCP and WRPOD special permits.” If so submitted, the Land Court opined that the Project would then “be permitted as of right as a light manufacturing use at [the Site], subject to such conditions as the Board may reasonably require in order to approve Newport’s special permit applications.”

 Don Siriani attended on behalf of the Board.

 The notice for each executive session included the information set forth above with minor variation. See Ex. 2(A).

 The final Settlement Agreement which was signed by the Board’s principal, Richard DeFelic, was approved by a super majority of the Board (4-5) and a simple majority (3-5) of the Planning Board.

 The meeting, which was held as scheduled on October 25, 2016, lasted over seven hours with approximately 800 members of the public in attendance.

 The Order amended a number of provisions included in the Agreement for Judgment. Paragraph 3 provided, in part, as follows: “In allowing the Agreement for Judgment to be entered the court has not adjudicated any of the ... potential issues with the Agreement for Judgment that has been notice by this court, namely, (a) the authority of the Selectmen to direct the settlement of this matter, (b) the adequacy of the appeals procedure from the Special Permit, and (c) any compliance with the Open Meeting Law. Those issues are specifically preserved and may be raised in any prospective G.L.c. 40A, §17 appeal from the Special Permit.” Paragraph 4 provided “Any breach of, or failure to perform under, the Agreement for Judgment or any agreement, undertaking, *14 document, or conveyance executed, entered into, or made pursuant to the Agreement for Judgment shall not constitute contempt of this court. Any litigation concerning or arising under an such agreement, undertaking, document, or conveyance may be brought in, determined by, any court of competent jurisdiction.” (Compl., Ex. B.)

 Although not complained of specifically, this Court preliminarily finds that the Municipal Defendants have satisfied their burden of showing “the need for a closed session” as public discussion of their position relative to settlement would have been detrimental to its negotiating position. District Attorney for the Northwestern Dist. v. Selectmen of Sunderland, 11 Mass.App.Ct. 663, 666 (1981).

 Citing to Mass.R.Civ.P. 11(a), Newport and Groton seek sanctions against the Voters, arguing that Voter Laurence E. Sweeney failed to disclose that he was an attorney, and that the TRO was obtained by misrepresenting the “immediate and irreparable injury” the Voters would suffer. Attorney Sweeney is a pro se plaintiff; he is not “ghost writing,” a term used to describe the drafting of documents by an attorney for a client without filing an appearance in the client’s case. Both this Court, along with all of the parties involved, including Newport and Groton, have benefitted from having documents prepared properly and issues presented more clearly. Moreover, the fact that this Order will dissolve the TRO is insufficient, without more, to warrant Rule 11 sanctions.